IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| YVONNE KENNEDY, JAMES BUSKEY, AND WILLIAM CLARK,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>HONORABLE BOB RILEY, as Governor of the State of Alabama,<br><br>　　　　　Defendant. | CIVIL ACTION NO.<br>2:05-cv-01100-MHT-DRB |

# Plaintiffs' Trial Brief

## I.   Introduction

This case arises under Section 5 of the Voting Rights Act. The complaint alleges that the State of Alabama has failed to obtain preclearance for a new "practice, procedure, or prerequisite to voting" (for simplicity, "voting practice"). The specific change in voting practices is the filing of vacancies on a county commission by gubernatorial appointment, when prior practice had been to use a special election.

The usual questions in a Section 5 "coverage" action are (1) whether the jurisdiction is covered by Section 4(b) of the Voting Rights Act;[1] (2) whether the jurisdiction has adopted or enforced a voting practice which is different from an earlier voting practice (in effect on 1 November 1964 or

---

[1] Alabama is a covered jurisdiction. "Procedures for the Administration of Section 5 of the Voting Rights Act," 28 CFR Part 51, Appendix (also available on the Internet at http://www.usdoj.gov/crt/voting/sec_5/guidelines.htm).

later); and (3) whether the jurisdiction has obtained either a letter of preclearance from the U.S. Attorney General or a favorable declaratory judgment from the U.S. District Court for the District of Columbia.[2] Only Question 2 is in dispute in this action.

## II.   Decisions of state courts modifying election procedures are "changes" that must be submitted for preclearance.

In *Hathorn v. Lovorn,* 457 U.S. 255 (1982), the Supreme Court was presented the question, "whether a state court may order implementation of a change in election procedure over objections that the change is subject to preclearance under § 5 of the Voting Rights Act of 1965." *Hathorn* at 257. In answer to this question, the Court held:

> Finally, the presence of a court decree does not exempt the contested change from § 5. We held only last Term that § 5 applies to any change "reflecting the policy choices of the elected representatives of the people," even if a judicial decree constrains those choices. *McDaniel v. Sanchez*, 452 U.S. 130, 153, 101 S.Ct. 2224, 2238, 68 L.Ed.2d 724 (1981). Although *McDaniel* involved a reapportionment plan drafted pursuant to a federal court's order, its interpretation of § 5 is equally instructive here. When state or local officials comply with a court order to enforce a state statute, there is no doubt that their actions "reflec[t] the policy choices of ... elected representatives." Indeed, if § 5 did not encompass this situation, covered jurisdictions easily could evade the statute by declining to implement new state statutes until ordered to do so by state courts. Cf. *McDaniel v. Sanchez, supra,* at 151, 101 S.Ct., at 2237 (noting that "if covered jurisdictions could avoid the normal preclearance procedure by awaiting litigation challenging a refusal to

---

[2] Neither the State nor Mobile County has made a submission. Joint Stipulation of Fact (Doc. 14), at ¶ 19.

> redistrict after a census is completed, [§ 5] might have the unintended effect of actually encouraging delay in making obviously needed changes in district boundaries"). In light of *McDaniel*, we conclude that a state court decree directing compliance with a state election statute contemplates "administ[ration]" of the state statute within the meaning of § 5.

*Hathorn* at 265 n.16. On remand, a three-judge court granted summary judgment to the United States and enjoined the school board from administering or enforcing the majority-vote provision of the state statute until it had been precleared. *United States v. Louisville Municipal Separate District Board of Trustees,* 557 F.Supp. 1168, 1170-71 (N.D. Miss. 1983).

It is not the Supreme Court of Alabama which must submit the request for preclearance. Instead, it is state election officials who are seeking to administer the new voting practice, and Section 5 explicitly requires that they obtain preclearance before they "seek to administer" a change.

## III. There has been a "change" which triggers Section 5 of the Voting Rights Act.

To see the nature of the "change" wrought by the *Riley v. Kennedy* decision, the Court need look no further than Etowah County. After the adoption and preclearance of Act 2004-455, Etowah County experienced a vacancy on its county commission and held a special election pursuant to a pre-2004 local act. Exhibit L, page 28 n.2 (letter of Legislative Reference Service). The Secretary of State's website lists the date of the election as 26 April 2005.[3] This demonstrates that other knowledgeable Alabama officials

---

[3] http://www.sos.state.al.us/election/2005/scheduled.cfm (last visited 20 January 2006).

considered Act 2004-455 to be retroactive before the *Riley v. Kennedy* decision held it was not. In addition, it shows that Alabama was **enforcing** Act 2004-455 as if it applied to pre-2004 Acts.

Even if the defendant argues that the Alabama Supreme Court only applied existing principles to the interpretation of Act 2004-455 (as opposed to "made new law"), the enforcement of the Act in Etowah County after its preclearance certainly makes it the benchmark for determination of whether there was a change. For example, in *Perkins v. Matthews,* 400 U.S. 379 (1971), the city of Canton, Mississippi, held its 1965 aldermanic election using ward elections rather than the a-large system imposed by a 1962 statute. When sued under Section 5 to prevent it from using at-large elections in the 1969 election, Canton argued "that it had no choice but to comply with the 1962 statute in the 1969 elections." *Perkins* at 440. The Supreme Court held that the procedure in force and effect on 1 November 1964 was the procedure used in the 1965 election.

In this case, the benchmark against which to judge the *Riley* decision is the situation "in force and effect" immediately before it was decided. *Abrams v. Johnson,* 521 U.S. 74, 97 (1997); Section 5 Guidelines, 28 C.F.R. § 51.54(b)(1).

### IV.     Mobile County has changed voting practices without preclearance.

Since 1985, the state law applicable to filling vacancies on the Mobile County Commission has alternated between gubernatorial appointment and special election.

In 1985, the Alabama Legislature adopted Act 85-237, a local act providing for the election of county commissioners whenever vacancies occurred on the Mobile County Commission. Joint Stipulation (Doc. 14), Exhibit A.[4] The Alabama Attorney General submitted Act 85-237 for preclearance on 15 April 1985. Exhibit B. The U.S. Attorney General issued a "no objection" letter regarding Act 85-237 on 17 June 1985. Exhibit C. At this point, Alabama law authorized a special election, and that was the only way to fill a vacancy consistent with the Voting Rights Act.

Two years after Act 85-237 was enacted, a Mobile County voter filed suit to have it declared unconstitutional. In *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988), the Alabama Supreme Court held that the subject of Act 85-237 was subsumed by general law (Ala. Code § 11-3-6) and was therefore invalid under Ala. Const. Art. IV § 105. Exhibit D.

Under *Hathorn v. Lovorn,* the State of Alabama or Mobile County should have submitted the *Stokes v. Noonan* decision for preclearance. Until such preclearance was obtained, neither Mobile County nor the State could legally enforce or administer the change made by *Stokes v. Noonan.* The defendant has stipulated that no such submission has occurred. Joint Stipulation (Doc. 14) at ¶ 19.

In 2004, the Legislature adopted Act 2004-455 which amended Ala. Code § 11-3-6 to allow local laws providing methods other than gubernatorial appointment for filling vacancies. Exhibit E. The Alabama Attorney General submitted Act 2004-455 for preclearance on 9 August 2004. Exhibit F. The

---

[4] All the Exhibits are part of the Joint Stipulation (Doc. 14).

Attorney General of the U.S. issued a "no objection" letter regarding Act 2004-455 on 28 September 2004. Exhibit G.

The submission of Act 2004-455 mentioned *Stokes v. Noonan,* but did not state explicitly whether the new Act would have any effect on the previously-precleared Act 85-237. Exhibit F.

When Mobile County Commissioner Sam Jones was elected Mayor of the City of Mobile, the plaintiffs in this suit filed suit in Montgomery County Circuit Court for relief including a declaration that the upcoming vacancy should be filled by special election. The plaintiffs took the position that Act 2004-455 had revived Act 85-237. Eventually, the Alabama Supreme Court decided that Act 2004-455 had a prospective effect only; that is, only local acts passed after the effective date of Act 2004-455 could take advantage of the proviso enacted by that Act. *Riley v. Kennedy,* Exhibit M.

No Alabama official has submitted the *Riley v. Kennedy* decision for preclearance. Joint Stipulation (Doc. 14) at ¶ 19.

In summary, each time the Legislature has acted to provide for special elections to fill vacancies, the Alabama Attorney General has submitted the act and obtained preclearance. In contrast, the Alabama Attorney General has not submitted either of the Alabama Supreme Court decisions for preclearance. The effect of these actions (preclearances and non-submissions) is that Acts 85-237 and 2004-455 are enforceable (at least insofar as the Voting Rights Act is concerned), but neither *Stokes v. Noonan* nor *Riley v. Kennedy* are.

## V.     Remedy

The first step in the remedy should be a declaratory judgment that the State has violated the Voting Rights Act.

The second step should be an injunction. In *Clark v. Roemer,* 500 U.S. 646, 652-53 (1991), the Supreme Court held, "If voting changes subject to § 5 have not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes."

The District Court in *United States v. State of Louisiana,* 952 F.Supp. 1151, 1174-75 (W.D. La.), *aff'd* 521 U.S. 1101 (1997), summarized the law regarding remedial orders in Section 5 cases:

> The Supreme Court has held that when an election has already been held and local officials have not sought administrative or judicial preclearance, three-judge courts should "enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so *or if the required federal approval is not forthcoming.*" *Perkins v. Matthews,* 400 U.S. [379] at 396-97, 91 S.Ct. at 441 (emphasis added); see also *Lopez v. Monterey County,* 519 U.S. [9] at ----, 117 S.Ct. at 347; *Clark v. Roemer,* 500 U.S. [646] at 654, 111 S.Ct. at 2102; *NAACP v. Hampton County Election Comm'n,* 470 U.S. [166] at 182-83, 105 S.Ct. at 1137-38; *Berry v. Doles,* 438 U.S. 190, 192, 98 S.Ct. 2692, 2693-94, 57 L.Ed.2d 693 (1978) (per curiam). We do not, however, read these cases as standing for the proposition that elections held pursuant to an illegal election scheme *automatically* requires [sic] us to void the election results, remove the City Court judges from office, and order new elections which do not include the unprecleared annexations. See, e.g., *United States v. City of Houston,* 800 F.Supp. [504] at 505. Those cases plainly condition ordering new elections on a failure to obtain "*federal* approval," which may come in the form of administrative or judicial preclearance. Thus, in our view, the Supreme Court has said that if an illegal election has been held (as in this case because the

Attorney General interposed a timely objection and judicial preclearance has not been obtained) and the submitting jurisdiction has been given an opportunity but has failed to obtain administrative and/or judicial preclearance, voiding the illegal elections and ordering new elections is required. Because neither the City nor the State have sought judicial preclearance for the annexations, we are not compelled to void the election results and order new elections.

The law summarized in *United States v. Louisiana* calls on this Court to give the State of Alabama a short period of time to obtain preclearance, and during that time, Commissioner Chastang (the appointee of Gov. Riley) could continue to serve. If preclearance is obtained, no further relief would be necessary (except for the awarding of fees and costs). If the State cannot obtain preclearance, then the Court should order the State to call a special election to fill the vacancy.

Plaintiffs request that the Court enter the following relief:

(1) a declaratory judgment;

(2) an injunction against enforcement of the *Stokes* and *Riley* decisions until they are precleared;

(3) an injunction giving the State ninety (90) days to obtain preclearance by either the administrative or judicial route;

    (a) during the preclearance process, Mr. Chastang would be entitled to remain in office;

    (b) if preclearance were obtained, no futher injunction would be necessary;

    (c) if preclearance were not obtained, the Court would enter a further injunction setting a special election and terminating Mr. Chastang's tenure on the Commission;

  (4) an award of reasonable attorneys' fees and expenses (subject to motion of the plaintiffs within a specific time after final relief is granted or preclearance is obtained).

              Submitted by,

| | |
|---|---|
| | /s/ Edward Still |
| Cecil Gardner | Edward Still |
| Vance McCrary | 2112 11th Avenue South |
| Gardner, Middlebrooks, Gibbons & Kittrell | Suite 201 |
| Post Office Drawer 3103 | Birmingham AL 35205-2844 |
| Mobile AL 36652 | phone: 205-320-2882 |
|  phone 251.433.8100 | fax: 877-264-5513 |
|  fax 251.433.8181 | email: Still@votelaw.com |
|  email cgardner@gmlegal.com | |
|  email vmccrary@gmlegal.com | |

CERTIFICATE OF SERVICE

      I certify that on 20 January 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

John J. Park, Jr. Esq.
Assistant Attorney General
Office of the Attorney General of
Alabama
11 South Union Street
Montgomery AL 36130-0152
    phone: 334-242-7401
    fax: 334-242-4891
    email: jpark@ago.state.al.us


                                           /s/ Edward Still