IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| YVONNE KENNEDY, JAMES BUSKEY, AND WILLIAM CLARK,<br><br>    Plaintiffs,<br><br>v.<br><br>HONORABLE BOB RILEY, as Governor of the State of Alabama,<br><br>    Defendant. | CIVIL ACTION NO.<br>2:05-cv-01100-MHT-DRB |

# Plaintiffs' Trial Brief in Reply

## I. There has been a "change" which triggers Section 5 of the Voting Rights Act.

### A. The defendant conflates the "change" with the remedy.

Gov. Riley agrees that "the dispositive issue is whether there has been a change,"[1] but he wishes to conflate the "change" question with the question of the proper remedy. He does this in the very next paragraph by raising the specter of "serious issues of constitutional magnitude." Riley claims that this Court cannot enforce the Voting Rights Act against an uncleared change in voting practices if the previous act is void under state law. There are two answers to that assertion.

First, whether there has been a change is not dependent on the remedy that the Court may order either in the interim before preclearance or

---

[1] Trial Brief of Gov. Riley (Doc. 16) at 4.

if preclearance is not obtained. As this Court said in *Henderson v. Graddick,* 641 F.Supp. 1192, 1198 (M.D. Ala. 1986) (3-judge court):

> The role of this three judge court is sharply circumscribed to a three-part inquiry: (1) whether there was a change in the rules … that was subject to preclearance under Section 5 of the Voting Rights Act; (2) if so, whether the requirements of Section 5 were respected; and (3) if not, what permissible remedy is appropriate to cure that wrong.

As the *Henderson* Court made clear, the "change" question comes first and is not dependent on the "remedy" question.

Second, the invalidity of the prior state law arises in nearly every Section 5 case. For instance, assume that the Legislature passes Act 100 and obtains preclearance of it. Assume further that the Legislature, a year later, passes Act 200 to repeal Act 100. If the State applied the same argument in our hypothetical case it makes in this case, it would argue that the application of the Voting Rights Act requires it to continue enforcing an act which is not "valid and enforceable" – because Act 100 has been repealed. And the State would argue this "run[s] afoul of the Tenth Amendment to the United States Constitution."[2]

The State's circular argument would prevent the enforcement of the Voting Rights Act's preclearance requirement for nearly every new voting-related practice. The problem, of course, stems from the characterization of the State that an injunction forbidding the enforcement of an ungrecleared act necessarily "validate[s]" another law. Neither this Court nor any other

---

[2] Trial Brief of Gov. Riley (Doc. 16) at 4.

federal court hearing a "coverage action"[3] under the Voting Rights Act is "validating" a prior state law. Instead, it is simply requiring the jurisdiction to continue enforcing a prior voting **practice** until it completes the process of repealing or replacing the new one.

A court hearing a "coverage action" still possesses its usual equitable powers to craft a remedy that does not leave citizens without an election system, but that remedy may not be one that the jurisdiction would have adopted on its own. For instance, in *Henderson v. Graddick*, 641 F.Supp. 1192, 1204 (M.D. Ala. 1986), the Court ordered the Democratic Party to hold a new runoff election unless the Party determined through an already-pending election contest that one of the candidates had obtained enough legal votes to win. Neither the plaintiff voters nor the defendants (one candidate and the political party) had requested this relief.

### B. The previous practice was to hold special elections.

We argued in our opening brief that the special Etowah County Commission election provides proof that the actual practice (after the adoption and preclearance of Act 2004-455) was to read that Act as retroactive. Gov. Riley responds with two points. First, the special election in Etowah was based on "a questionable, if not mistaken, view of state law." Second, a special election in Etowah County establishes a practice only for

---

[3] The term "coverage action" refers to those suits brought to obtain an injunction against enforcement of a changed practice. The terminology comes from the Supreme Court's reference to "'coverage' questions" in *Allen v. State Bd. of Elections,* 393 U.S. 544, 559 (1969).

3

Etowah County, not for Mobile County. We will respond to these points in turn.

First, the Attorney General of Alabama shared the "mistaken" view of the state of the law when he wrote in an official opinion on 7 September 2004 to Rep. Steve Clouse, "Vacancies on the Houston County Commission occurring after May 14, 2004 [the date of adoption of Act 2004-455], should be filled by special election as provided by local Act 86-174."[4] But it does not matter if the Attorney General was mistaken, or if the Etowah County officials were mistaken. Section 5 applies to changes in the actual practices of the covered jurisdiction. As we noted in our opening brief, the City of Canton, Miss., "mistakenly" held an election using districts in 1965 even though a general state law required at-large elections.[5] The Supreme Court held that Canton had to preclear its use of at-large elections because it was changing from the actual practice of using district elections. *Perkins v. Matthews,* 400 U.S. 379 (1971).

Second, Gov. Riley's argument is too compartmentalizing. Act 2004-455 is an act of statewide application allowing the operation of local acts. It does not allow local acts in counties in the first third of the alphabet or counties with populations less than 100,000. It applies to all counties; therefore the use of that Act anywhere in the State constitutes a prior "practice" which must be given cognizance in the Section 5 process. Likewise, the Alabama Supreme Court's interpretation of Act 2004-455 has statewide

---

[4] Ala. A.G. Op. 2004-215, reproduced on pp. 32-35 of Exhibit L.

[5] *Perkins v. Matthews,* 301 F.Supp. 565, 566 (S.D. Miss. 1969), rev. 400 U.S. 379 (1971).

4

application. Since the Act necessarily operates one county at a time (whenever a vacancy occurs), compartmentalizing the issue of prior practice to a county-by-county inquiry would be as illogical as claiming that we must compartmentalize a general statute into separate parts relating to each office (sheriff, tax collector, coroner, etc.) to be affected by it.

## II. Decisions of state courts modifying election procedures are "changes" that must be submitted for preclearance.

Gov. Riley characterizes this action as one seeking the "overturning [of] the decision of the Alabama Supreme Court on an issue of state law."[6] As we noted in our opening brief, "It is not the Supreme Court of Alabama which must submit the request for preclearance. Instead, it is state election officials who are seeking to administer the new voting practice, and Section 5 explicitly requires that they obtain preclearance before they 'seek to administer' a change." Similarly, we are not asking this Court to "overturn" a decision of the Alabama Supreme Court. Instead, we seek only what Section 5 provides. As the Supreme Court stated in *Lopez v. Monterey County,* 519 U.S. 9, 20:

> No new voting practice is enforceable unless the covered jurisdiction has succeeded in obtaining preclearance. If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change.

After the U.S. Supreme Court held that "a state court decree directing compliance with a state election statute contemplates

---

[6] Trial Brief of Gov. Riley (Doc. 16) at 5.

'administ[ration]' of the state statute within the meaning of § 5," *Hathorn v. Lovorn,* 457 U.S. 255, 265 n.16 (1982), a three-judge court (hearing the matter on remand) granted summary judgment to the United States and enjoined the school board from administering or enforcing the majority-vote provision of the state statute (as interpreted by the state supreme court) until it had been precleared. *United States v. Louisville Municipal Separate District Board of Trustees,* 557 F.Supp. 1168, 1170-71 (N.D. Miss. 1983).

Similarly, *Gresham v. Harris,* 695 F.Supp. 1179 (N.D. Ga. 1988), *aff'd sub nom. Poole v. Gresham,* 495 U.S. 954 (1990), involved a voting change precipitated by a state court order changing the date of a town election because of a controversy over the boundaries of a town. The District Court enjoined "the defendants … from departing from the voting practices precleared by the Attorney General without obtaining preclearance for any subsequent changes, **by judicial order** or otherwise." *Gresham v. Harris,* 695 F.Supp. at 1184 (emphasis added).

Submitted by,

Cecil Gardner
Vance McCrary
Gardner, Middlebrooks, Gibbons & Kittrell
Post Office Drawer 3103
Mobile AL 36652
    phone 251.433.8100
    fax 251.433.8181
    email cgardner@gmlegal.com
    email vmccrary@gmlegal.com

/s/ Edward Still
Edward Still
2112 11th Avenue South
Suite 201
Birmingham AL 35205-2844
    phone: 205-320-2882
    fax: 877-264-5513
    email: Still@votelaw.com

CERTIFICATE OF SERVICE

      I certify that on 10 February 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

John J. Park, Jr. Esq.
Assistant Attorney General
Office of the Attorney General of Alabama
11 South Union Street
Montgomery AL 36130-0152
    phone: 334-242-7401
    fax: 334-242-4891
    email: jpark@ago.state.al.us

                                            /s/ Edward Still