IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YVONNE KENNEDY, JAMES ) <br> BUSKEY & WILLIAM CLARK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> HONORABLE BOB RILEY, ) <br> as Governor of the State of Alabama ) <br> ) <br> Defendant. ) | CIVIL ACTION <br> NO. 2:05 CV 1100-T |

## SUPPLEMENTAL BRIEF OF GOVERNOR RILEY

Pursuant to this Court's oral Order of March 29, 2006, Bob Riley, in his official capacity as Governor of Alabama, submits this Supplemental Brief. For the reasons stated in Governor Riley's Trial Brief and this Supplemental Brief, this Court should enter judgment in favor of Governor Riley and against the Kennedy Plaintiffs.

## FACTUAL BACKGROUND

Through the earlier briefing in this case, the parties have shown that, before Act No. 85-237 was passed and approved, a general state law that was in effect before November 1, 1964 provided that vacancies on county commissions, including the Mobile County Commission, would be filled by gubernatorial appointment. Act No. 85-237 provided that certain vacancies on the Mobile County Commission would be filled by special election. While Act No. 85-237 was passed, approved, and precleared in 1985, there was no vacancy to fill until 1987. Moreover, before any special election was conducted under the authority of Act No. 85-237, the constitutionality of the Act was challenged in state court.

The Alabama Supreme Court's opinion in *Stokes v. Noonan*, 534 So. 2d 237 (Ala. 1988), shows that Stokes filed his challenge in April 1987. The special election to fill the vacancy did not take place until June 1987. While the Circuit Court of Mobile County ruled against Stokes, Stokes appealed from the judgment against him, so that judgment in favor of the validity of Act No. 85-237 was not final. In either event, whether the lawsuit or the appeal was pending, the June 1987 special election proceeded under a cloud.

In its decision in 1988, the Supreme Court of Alabama reversed judgment of the Circuit Court of Mobile County and declared Act No. 85-237 unconstitutional. With that decision, Sam Jones, who had been elected and took office under color of Act No. 85-237, lost any state-law right to remain in office and became vulnerable to an action in *quo warranto*. Governor Hunt mooted that problem, however, by appointing Jones to the Mobile County Commission.

**ARGUMENT**

In their Supplemental Brief, the Kennedy Plaintiffs contend that the State of Alabama is obligated to preclear *Stokes v. Noonan*.[1] They contend that, when Sam Jones took office under color of Act No. 85-237 after a special election in 1987, special elections to fill vacancies on the Mobile County Commission became the voting practice even though a state-law challenge to the constitutionality of Act No. 85-237 was pending. Governor Riley disagrees with these contentions.

In his Trial Brief, Governor Riley pointed out that before a statute from a State like Alabama that affects voting can be given effect, it must be both valid as a matter of

---

[1] In their Trial Brief, the Kennedy Plaintiffs also contended that the State is obligated to preclear *Riley v. Kennedy*. No. 15 at 2. ("To see the nature of the 'change' wrought by the *Riley v. Kennedy* decision, . . . .")

2

state law and precleared under Section 5. Preclearance makes a valid State statute enforceable, but both validity and preclearance are necessary.

*Abrams v. Johnson*, 521 U.S. 74, 117 S. Ct. 1925 (1997), demonstrates that both validity and preclearance are required. In the post-1990 redistricting cycle, the Georgia Legislature passed two redistricting plans that were not precleared and a third that was held to be the product of an unconstitutional racial gerrymander in *Miller v. Johnson*, 515 U.S. 900, 115 S. Ct. 2475 (1995). Ultimately, the federal courts drew a plan, and the Court considered a variety of challenges to that remedial plan, including a Section 5 challenge, in *Abrams*. With respect to that Section 5 challenge, the Court pointed out that a plan that was not precleared could not serve as a benchmark. 521 U.S. at 96, 117 S. Ct. at 1938. Neither could the plan that was held unconstitutional. As the Court explained, that plan, "constitutional defects and all," could not be the benchmark because "Section 5 cannot be used to freeze in place the very aspects of a plan found unconstitutional." 521 U.S. at 97, 117 S. Ct. at 1939. The unconstitutional plan could not be used as a benchmark even though elections had been conducted under it.

The same result should apply in this case. Act No. 85-237 was challenged under state law before any elections were conducted in accordance with it. The preclearance of Act No. 85-237 allowed the special election to proceed, but was otherwise immaterial in *Stokes v. Noonan*. And, the pending litigation made the outcome of that election contingent. Indeed, when Act No. 85-237 was held unconstitutional in *Stokes v. Noonan*, a gubernatorial appointment protected Sam Jones from an action in quo warranto.

This case illustrates the connection between litigation and preclearance. After the Circuit Court of Montgomery County held that the 2005 vacancy should be filled by

special election, the Probate Judge of Mobile County submitted the proposed election date for preclearance. The submission was made and precleared even though the litigation in the state court system was not final and the Alabama Attorney General's Office recommended that action be withheld. *See* No. 14 at Exhibits I, J, K. Preclearance could allow the Probate Judge to proceed with election preparations but could not moot the appeal in *Riley v. Kennedy*.

In this case, Act No. 85-237 was not challenged until 1987 after having been precleared in 1985. Even so, preclearance had to operate contingently until a challenge was made. Such a challenge might not have been ripe until a special election to fill a vacancy was scheduled. And, preclearance cannot cut off a legal challenge.[2]

*Perkins v. Matthews*, 400 U.S. 379, 91 S. Ct. 431 (1971), is not to the contrary. There, city of Canton, Mississippi, did not follow a 1962 state law in its 1965 municipal elections. When it sought to follow the 1962 law in 1969, the Court held that the change was one that required preclearance even though it had the effect of bringing Canton into compliance with state law. No court order, federal or state, mandated or prohibited Canton's compliance with the 1962 law. Instead, Canton deviated from that 1962 law on its own.

In this case, the Alabama Supreme Court held that Act No. 85-237 is unconstitutional in *Stokes v. Noonan*, thereby mooting the preclearance of that law in the same way that *Miller v. Johnson* mooted the preclearance of the redistricting plan that was held unconstitutional. Furthermore, in *Riley v. Kennedy*, the Alabama Supreme

---

[2] By their terms, preclearance letters do not "bar subsequence litigation to enjoin the enforcement of a change," *see, e.g.,* No. 14 at Exhibit G, much less a subsequent Section 2 or state law challenge.

4

Court held that Act No. 2004-455 did not operate retroactively to give effect to Act No. 85-237. Those decisions undercut the validity of Act No. 85-237 and preclude its taking effect.

Contrary to the Kennedy Plaintiffs' contention, preclearance of *Stokes v. Noonan* was not required. In retrospect, protocol might have been better served if a letter advising USDOJ of the decision in *Stokes v. Noonan* had been written and USDOJ advised that Act No. 85-237 was null, void, and of no effect. The Office of the Attorney General sent such a letter after *Riley v. Kennedy*. *See* No. 14 at Exhibit N. In Governor Riley's judgment, though, such a letter is not required, but would be sufficient. Permitting the State to proceed in this fashion demonstrates a measure of respect for the State's interests.

In contrast, the relief the Kennedy Plaintiffs seek is fraught with constitutional problems. Requiring the State to submit *Stokes v. Noonan*, or *Riley v. Kennedy*, for preclearance begs the question what would happen if USDOJ, with or without input from the Kennedy Plaintiffs or their supporters, objected. The State might then be compelled to conduct a special election under a state law that is unconstitutional and cannot be revived retroactively.[3] In that case, USDOJ would be making state law, and commandeering state officials in violation of the Tenth Amendment. Put differently, Section 5 would be unconstitutional as applied to the facts of this case.

In conclusion, the operative supplemental fact is the filing of the lawsuit in *Stokes v. Noonan* in April 1987, before any special election was conducted. That lawsuit made

---

[3] It would also be inconsistent with *Ex parte Southern Railway*, 556 So. 2d 1082, 1089-90 (Ala. 1989) (Acts declared unconstitutional are void *ab initio.*). This Court should apply state law in its decision.

5

the election contingent on the lawsuit's outcome, and the decision in *Stokes v. Noonan* deprived Act No. 85-237, and any election conducted under it, of validity. Without state-law validity, there is no law to enforce.

## CONCLUSION

For the reasons stated in Governor Riley's Trial Brief and this Supplemental Brief, this Court should enter judgment in favor of Governor Riley and against the Kennedy Plaintiffs.

Respectfully submitted,

**TROY KING (KIN047)**
**ATTORNEY GENERAL**
**BY:**

**s/ John J. Park, Jr.**
John J. Park, Jr. Bar Number: (PAR041)
Assistant Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that on the 25th day of April, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non CM/ECF participants):

J. Cecil Gardner, Esq.
M. Vance McCrary, Esq.
Gardner, Middlebrooks, Gibbons,
 Kittrell, Olsen, Walker & Hill
Post Office Box 3103
Mobile, AL 36652

Edward Still
2112 11th Avenue South, Suite 201
Birmingham, AL 35205

    **s/ John J. Park, Jr.**
John J. Park, Jr. Bar Number: (PAR041)
Assistant Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8440
E-mail: jpark@ago.state.al.us