1

STATE OF ALABAMA
JEFFERSON COUNTY

Edward Still, being first duly sworn, deposes and says:

1. My name is Edward Still. I am over the age of nineteen (19) years. I make the following statement (including attachments) based on personal knowledge.

2. I am one of the attorneys for the plaintiffs in this matter along with the attorneys at the NAACP Legal Defense and Educational Fund, Inc. ("LDF").

3. Attached as Exhibit 1-A is my resume and a list of cases in which I have represented parties or *amici*. As the Court can see, I have been involved in voting rights and election cases for nearly all of my legal practice and many of these cases have been quite significant in scope or effect.

4. During the past 25 years or more, my practice has been divided between employment-related cases and voting-related cases. From December 1997 through March 2001, I was Director of the Voting Rights Project at the Lawyers' Committee for Civil Rights Under Law, a non-profit public-interest law firm based in Washington, DC, but handling cases in much of the country. During April 2001 to July 2002, I was Special Counsel to the law firm of Dickstein Shapiro Morin & Oshinsky LLP, also in Washington. I worked exclusively on voting-related cases and campaign finance.

5. While many lawyers may represent candidates in the occasional election contest, there are few lawyers in the State of Alabama who work on voting rights cases as frequently as I do. I was able to handle this action efficiently because of my unique combination of experience in Alabama

election law (beginning with my work on a Democratic Party committee in the mid-1970s rewriting portions of the election code), voting rights cases across the country, and particularly my past experience in *Hunter v. Underwood.*

6. Attached as Exhibit 1-B is a list of my time in this action. This time was recorded contemporaneously using a computer program my office maintains for time, billing, practice management, contact information, and related matters. The time listed on Exhibit 1-B does not contain any time attributable to the federal case also called *Gooden v. Worley* now pending in the U.S. District Court for the Northern District of Alabama.

7. The overall time spent by both counsel is, in my judgment, wholly reasonable and necessary in light of the importance of this case to the voting rights of the plaintiffs, the significant statutory and constitutional law issues involved, and the time demands of the litigation.

8. This action has had to move along on a relatively fast track. When I was first contacted by Mr. Haygood and Norman Chachkin of the LDF, it was only a few days until the deadline for registration for the Birmingham City election in which Mr. Gooden wished to vote. I had to push several other matters to the back burner to get the case filed and obtain voter registration for Mr. Gooden. Since that time, I have endeavored to keep the case moving so that we might be able to obtain some relief for the plaintiff class in time for registration by many of them for the General Election this year.

9. It is my best professional judgment that all of the time expended by us was necessary and reasonable. It is my further opinion that we conducted this litigation in the most economical fashion possible consistent with our professional duty and judgment to competently and vigorously represent the plaintiff. In my opinion there has been no unnecessary duplication of effort among the lawyers representing the plaintiffs.

10. Mr. Haygood and I divided the work where possible so there would be little duplication of effort. For instance, one of us took the lead on a particular pleading or brief and then passed it to the other for review and revision. The use of email and telephone conferences allowed us to operate with speed and efficiency. I found the work produced by LDF and Mr. Haygood to be of uniformly high quality.

11. I did not necessarily record my time for every telephone conference with Mr. Haygood. Accordingly, his time logs may reflect conferences with me for which I did not separately bill. Any such discrepancy reflects a decision to exercise billing judgment by not recording my time, rather than an inaccuracy in the time records.

12. There is no readily ascertainable "market rate" for a plaintiff's attorney in a civil rights case. Most civil rights plaintiffs are unable to afford to pay counsel on an hourly basis. Virtually all such litigation is conducted on a contingency fee basis, with plaintiff's counsel relying heavily upon 42 U.S.C. § 1988 for remuneration.

13. Much of my work is done on a contingent-fee basis. When I bill an Alabama client on an hourly basis, I usually charge $200 to $250 per hour,

depending on the type of case. I was retained last year by the Speaker of the House to represent him in *Gustafson v. Johns,* NO. 05-0352-CG-D (U.S. District Court, SD Ala) at $200-250 per hour (depending on whether the work was in-court or out). When I was practicing law in Washington DC my billing rate was $340 per hour, which was charged to clients I represented in election- or voting-related cases in Arizona, Pennsylvania, and Kentucky.

14. Because of my experience and expertise in the field of voting rights, I believe that a fee of $250.00 per hour is reasonable and, perhaps, low.

15. Although Mr. Haygood is younger than I, his experience with LDF over the past 3 years has been almost exclusively on voting rights. He has been counsel in two other major actions relating to voting rights of persons convicted of felonies. Because of his experience and location, I suggest that a fee of $250.00 per hour is also reasonable for him.

16. This litigation was undertaken entirely on a contingent fee basis: no fees would be recovered from the plaintiffs; instead counsel would look to a recovery of fees from the defendant if the action were successful.

17. My costs and expenses are set forth in the attached expense report, Exhibit 1-C.

18. I routinely bill my clients for the items listed on Exhibit 1-C. I have a multi-year contract with Westlaw for use of its computer databases of case law and statutes. Because of that contract, I am able to charge less for Westlaw services to my clients than I would have to pay for those same services on an *à la carte* basis.

19.  I have also reviewed the expenses listed on Exhibit 2-C.  I routinely bill my clients for such expenses as listed by Mr. Haygood when it is necessary for me to travel out of state for representation of a client.

20.  I have had no prior professional relationship with either of the plaintiffs in this action.

_____
Edward Still

Sworn to and subscribed before me this 25 day of May, 2006.  I certify that the affiant is known (or made known) to me to be the identical party he or she claims to be.

_____
Notary Public for _1- 1 6· 0 8_____

[seal]