# EXHIBIT A

# Edward Still Law Firm LLC

Attorney *&* Mediator

(Admitted to practice law in Alabama and the District of Columbia)

WE DARE DEFEND *your* RIGHTS

Suite 201
2112 11th Avenue South
Birmingham AL 35205-2844

phone: 205-320-2882
fax: 877-264-5513 (toll free)
email: still@votelaw.com

websites: www.edwardstill.com *&* www.votelaw.com

28 November 2006

**via UPS Overnight**

Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
1800 G St., N.W.
Washington, DC  20006

> Re:    Comment on Section 5 submission
> No. 2006-6792
> State of Alabama, Mobile County Commission, procedures for filing
> vacancies

Dear Mr. Tanner:

The State of Alabama has requested preclearance of two Alabama Supreme Court decisions, *Stokes v. Noonan* and *Kennedy v. Riley,* each of which held that the Governor of Alabama had the authority to fill a vacancy on the Mobile County Commission, rather than allowing the people to elect a commissioner in a special election.

On behalf of my clients, Rep. James Buskey, Rep. William Clark, and Rep. Yvonne Kennedy, I request that you object to the State of Alabama's implementation of these two decisions.  The change from local elections to gubernatorial appointment will have a racially discriminatory impact.  Section 5(b) of the Voting Rights Act (as recently amended) provides:

> (b) Any ... standard, practice, or procedure with respect to voting
> that ... will have the effect of diminishing the ability of any
> citizens of the United States on account of race or color ... to
> elect their preferred candidates of choice denies or abridges the
> right to vote within the meaning of subsection (a) of this section.

Implementation of the change proposed by the State will violate this provision of the Voting Rights Act for the following reasons:

> ◆    First, this change will deny the voters in Mobile
> County the ability to **elect** a replacement member of
> the Commission whenever there is a vacancy.

Page 2 of 6
28 November 2006
Chief, Voting Section

- ◆ Second, because the State is about 26% black but the three commission districts in Mobile County are 62%, 18%, and 15% black, respectively, the black voters in District 1 of Mobile County will have a significantly lessened opportunity to elect **a preferred candidate of their choice** (as opposed to a candidate chosen by the Governor).

- ◆ Third, about 97% of the population of Alabama lives outside of District 1 of Mobile County, so the transfer of power of election from 75,000 voters to the Governor will have a significant effect.

- ◆ Fourth, the voters of Mobile County Commission District 1 have different political preferences than Gov. Riley. In the recent gubernatorial election, the voters of District 1 cast only 40% of the votes for Gov. Riley, while the other two Districts voted 73% for Riley.[1]

- ◆ Fifth, the (overwhelmingly white) voters of Etowah County's District 6 were allowed to elect a replacement commissioner, while the (overwhelmingly black) voters of Mobile County's District 1 were not.

As the Alabama Attorney General mentioned in his letter requesting preclearance, this matter has been the subject of litigation. Reps. Kennedy, Buskey, and Clark sued in federal court to enjoin Gov. Riley's enforcement of the Alabama Supreme Court decision until it was precleared. The Court entered judgment in the plaintiffs' favor. In that suit, the parties stipulated to most of the evidence. On the CD accompanying this letter, I have placed the two stipulations, all of the exhibits attached to the first stipulation, a chart showing the principal dates and events relevant to the change ("Timeline Mobile Co.pdf"), and a table showing the vote for governor in each precinct ("Gov vote by precinct1.xls").

**Recap of the facts:**

Since 1985, the state law applicable to filling vacancies on the Mobile County Commission has swung between gubernatorial appointment and special election.

In 1985, the Alabama Legislature adopted Act 85-237, a local act providing for the election of county commissioners whenever vacancies occurred on

---

[1] See the attached table, "Gov vote by precinct1.xls," based on a table obtained from the Mobile County Probate Court. I have added the information about the districts and sorted the table.

Page 3 of 6
28 November 2006
Chief, Voting Section

the Mobile County Commission. See Exhibit A. The Alabama Attorney General submitted Act 85-237 for preclearance on 15 April 1985. Exhibit B. The U.S. Attorney General issued a "no objection" letter regarding Act 85-237 on 17 June 1985. Exhibit C. At this point, Alabama law authorized a special election, and that was the only way to fill a vacancy consistent with the Voting Rights Act.

In the Spring of 1987, a vacancy occurred in the District 1 Commissioner position on the Mobile County Commission. Act 85-237 required a special election if more than one year remained in the term. Since there was more than one year remaining in the term, the election officials of Mobile County called a special election. Supplemental Stipulation at ¶ 1.

Sam Jones and another candidate qualified for the Democratic nomination, and Jones was nominated by the Democratic Party in a special primary. Jones also won the special general election over opposition. Supplemental Stipulation at ¶¶ 3-4.

Shortly after the vacancy occurred, a Mobile County voter filed suit to have Act 85-237 declared unconstitutional. The Circuit Court ruled in favor of the constitutionality of the law. Supplemental Stipulation at ¶ 5. On appeal to the Alabama Supreme Court, the Court held that the subject matter of Act 85-237 was subsumed by general law (Ala. Code § 11-3-6) and was therefore invalid under Ala. Const. Art. IV § 105. *Stokes v. Noonan,* 534 So.2d 237 (Ala. 1988); Joint Stipulation Exhibit D.

Under *Hathorn v. Lovorn,* 457 U.S. 255 (1982), the State of Alabama or Mobile County should have submitted the *Stokes v. Noonan* decision for preclearance. Until such preclearance was obtained, neither Mobile County nor the State could legally enforce or administer the change made by *Stokes v. Noonan.* The State has stipulated that no such submission has occurred (prior to this one). Joint Stipulation at ¶ 19.

Gov. Guy Hunt gave Sam Jones a commission of appointment after the *Stokes* decision. Supplemental Stipulation at ¶ 7. Because the State never obtained preclearance for the *Stokes* decision before Gov. Hunt administered it by appointing Jones, Gov. Hunt's action was unnecessary and illegal because Jones's elected term on the Mobile County Commission had not been terminated.

In 2004, the Legislature adopted Act 2004-455 which amended Ala. Code § 11-3-6 to allow local laws providing methods other than gubernatorial appointment for filling vacancies. Exhibit E. The Alabama Attorney General submitted Act 2004-455 for preclearance on 9 August 2004. Exhibit F. The Attorney General of the U.S. issued a "no objection" letter regarding Act 2004-455 on 28 September 2004. Exhibit G.

The submission of Act 2004-455 mentioned *Stokes v. Noonan,* but did not state explicitly whether the new Act would have any effect on the previously-precleared Act 85-237. Exhibit F.

Page 4 of 6
28 November 2006
Chief, Voting Section

When Mobile County Commissioner Sam Jones was elected Mayor of the City of Mobile and made plans to resign from his position on the Commission, Reps. Kennedy, Buskey, and Clark filed suit in Montgomery County Circuit Court for relief including a declaration that the vacancy should be filled by special election. The plaintiffs took the position that Act 2004-455 had revived Act 85-237. Eventually, the Alabama Supreme Court decided that Act 2004-455 had a prospective effect only; that is, only local acts passed after the effective date of Act 2004-455 could take advantage of the proviso enacted by that Act. *Riley v. Kennedy,* Exhibit M.

The benchmark against which to judge the *Riley v. Kennedy* decision is the situation "in force and effect" immediately before it was decided. *Abrams v. Johnson,* 521 U.S. 74, 97 (1997); Section 5 Guidelines, 28 C.F.R. § 51.54(b)(1). The benchmark situation was the special-election requirement of Act 85-237 which had been precleared and administered in 1985-87 and reaffirmed by Act 2004-455 (which in turn had been precleared in 2004 and administered in other counties in 2004).

In summary, each time the Legislature has acted to provide for special elections to fill vacancies, the Alabama Attorney General has submitted the act and obtained preclearance. In contrast, the Alabama Attorney General has now belatedly submitted the Alabama Supreme Court decisions for preclearance – only after being ordered to do so by the District Court.

**Act 2004-455 has been enforced in other counties.**

To see the nature of the "change" wrought by the *Riley v. Kennedy* decision, you need look no further than Houston and Etowah Counties. After the adoption and preclearance of Act 2004-455, each County experienced a vacancy on its county commission and held a special election pursuant to a pre-2004 local act.

A special election was held in Houston County in accordance with Act 2004-455. The Attorney General of Alabama wrote in an official opinion on 7 September 2004 to Rep. Steve Clouse, "Vacancies on the Houston County Commission occurring after May 14, 2004 [the date of adoption of Act 2004-455], should be filled by special election as provided by local Act 86-174." Ala. A.G. Op. 2004-215, reproduced on pp. 32-35 of Exhibit L. The special election date was submitted for preclearance (No. 2004-3698) on 23 August 2004.

A letter relating to the Etowah County election is Exhibit L, page 28 n.2 (letter of Legislative Reference Service). The Secretary of State's website (http://www.sos.state.al.us/election/2005/scheduled.cfm (last visited 22 November 2006) lists the date of the election as 26 April 2005. This demonstrates that Alabama was **enforcing** Act 2004-455 as if it applied to pre-2004 Acts. The Etowah County special election was in a majority-white district, District 6. (I have not found a preclearance request for this special election on your website.)

Page 5 of 6
28 November 2006
Chief, Voting Section


**Precedent supports a denial of preclearance**

In this case, the benchmark against which to judge the *Riley* decision is the situation "in force and effect" immediately before it was decided. *Abrams v. Johnson,* 521 U.S. 74, 97 (1997); Section 5 Guidelines, 28 C.F.R. § 51.54(b)(1). It does not matter if the Attorney General was mistaken, or if the Houston or Etowah County officials were mistaken. Section 5 applies to changes in the actual practices of the covered jurisdiction. The City of Canton, Miss., "mistakenly" held an election using districts in 1965 even though a general state law required at-large elections. The Supreme Court held that Canton had to preclear its use of at-large elections because it was changing from the actual practice of using district elections. *Perkins v. Matthews,* 301 F.Supp. 565, 566 (S.D. Miss. 1969), rev. 400 U.S. 379 (1971).

A similar situation was presented in *Horry County v. United States,* 449 F.Supp. 990 (D.D.C. 1978), where the Court held,

> An alternate reason for subjecting the new method of selecting the Horry County governing body to Section 5 preclearance is that the change involved *reallocates governmental powers among elected officials voted upon by different constituencies.* Such changes necessarily affect the voting rights of the citizens of Horry County, and must be subjected to Section 5 requirements.

*Horry County,* 449 F.Supp. at 995 (emphasis added). The Court in *Hardy v. Wallace,* 603 F.Supp. 174, 178 (N.D. Ala. 1985), relied on *Horry County* and held that Alabama had to submit for preclearance a law that had transferred appointment of the Greene County Racing Commission from the local legislative delegation to the Governor. The *Hardy* Court noted that

> that the *transfer* of appointment authority to the governor, over 99.7% of whose constituents are not inhabitants of Greene County, substantially dilutes the power of the voters in Greene County by effectively eliminating the power of such voters over the Commission.

*Hardy,* 603 F.Supp. at 179.

The Solicitor General informed the Supreme Court of the following pre-1991 Section 5 objections to transfers of authority:

> (1) Mobile, Alabama, March 2, 1976, involving a transfer of administrative duties from the entire commission to individual commissioners; (2) Charleston, South Carolina, June 14, 1977, involving a transfer of taxing authority from the legislative delegation to the county council; (3) Edgefield County, South Carolina, February 8, 1979, involving a transfer of increased taxing power to the county council; (4) Colleton County, South Carolina, September 4, 1979, involving a transfer of authority to

Page 6 of 6
28 November 2006
Chief, Voting Section

tax for school purposes from the legislative delegation to the county council;  (5) Brunswick and Blynn County, Georgia, August 16, 1982, involving the abolition of separate city and county commissions and the transfer of their powers to a consolidated commission;  (6) Hillsborough County, Florida, August 29, 1984, involving a transfer of power over municipalities from the legislative delegation to the county commission (objection was withdrawn because the county made clear that it did not intend to effect such a transfer);  (7) Waycross, Georgia, February 16, 1988, involving a change in the duties of the mayor;  and (8) San Patricio, Texas, May 7, 1990, involving a transfer of voter registration duties from the county clerk to the county tax assessor.

*Presley v. Etowah County,* 502 U.S. 491, 513 n.3 (1992) (Stevens, J., dissenting), *citing* Brief for United States as *Amicus Curiae* 16, n. 6.

I will be happy to talk with you further regarding this matter.  Please call or email me at your convenience.

Sincerely,

Edward Still

encl.

cc w/ encl:
Hon. James Buskey
Hon. William Clark
Cecil Gardner, Esq.
Sam Heldman, Esq.
Hon. Yvonne Kennedy
Vance McCrary, Esq.
John J. Park, Jr. Esq. (by email only)



Preclearance Request No. 2006-6792 (Mobile Co., Ala., Commission vacancies)

**Apr 8, 1985** — Act 85-237 enacted

**Apr 15, 1985** — Ala AG submits Act 85-237 for preclearance

**Jun 17, 1985** — DOJ preclears Act 85-237

**Sep 30, 1988** — Alabama Sup Ct declares Act 85-237 precluded by a general law (*Stokes v. Noonan*)

**Jun 30, 1987** — Special election held for Mobile Co. Commission

**May 14, 2004** — Act 2004-455 enacted

**Aug 9, 2004** — Ala AG submits Act 2004-455 for preclearance

**Sep 7, 2004** — AG opinion 2004-215: Act 2004-455 revives prior "special election" law in Houston Co.

**Sep 28, 2004** — DOJ preclears Act 2004-455

**Apr 26, 2005** — Etowah Co. uses Act 2004-455 to hold special election under pre-2004 local act

**Nov 9, 2005** — Ala Sup Ct holds Act 2004-455 to be prospective only (*Riley v. Kennedy*)

1985    1986    1987    1988    2004    2005



# Mobile County Probate Court
Mobile County, Alabama

## Precinct breakdown - All
## FOR GOVERNOR

| Precinct No | Precinct | LUCY BAXLEY (DEM) | Vote Percent | BOB RILEY (REP) | Vote Percent | WRITE IN | Vote Percent | Co. Comm. District |
|---|---|---|---|---|---|---|---|---|
| 0 | *Summary | 34,198 | 37% | 58,690 | 63% | 307 | 0% | |
| 1 | HOWARD BLACKWELL LODGE | 458 | 24% | 1,441 | 76% | 3 | 0% | 1 |
| 2 | FIRST BAPTIST CHURCH OF AXIS | 292 | 37% | 498 | 63% | 3 | 0% | 1 |
| 3 | MT VERNON CIVIC CENTER | 342 | 61% | 213 | 38% | 2 | 0% | 1 |
| 4 | OLD BELSAW SCHOOL/SHEPARD'S LAKE | 217 | 88% | 29 | 12% | 0 | 0% | 1 |
| 6 | TURNERVILLE COMMUNITY CTR | 257 | 24% | 821 | 76% | 4 | 0% | 1 |
| 8 | CHUNCHULA BAPTIST CHURCH | 93 | 33% | 188 | 67% | 0 | 0% | 1 |
| 9 | KALI OKA CIVIC CLUB | 142 | 18% | 650 | 82% | 2 | 0% | 1 |
| 10 | BAYOU SARA BAPTIST CHURCH | 325 | 27% | 851 | 72% | 6 | 1% | 1 |
| 11 | SARALAND CIVIC CENTER | 255 | 25% | 769 | 75% | 4 | 0% | 1 |
| 12 | CHICKASAW AUDITORIUM | 420 | 31% | 935 | 69% | 6 | 0% | 1 |
| 14 | BISHOP STATE COMM COLLEGE | 423 | 89% | 50 | 11% | 0 | 0% | 1 |
| 16 | SPRINGHILL AVE RECREATION CTR | 333 | 50% | 335 | 50% | 4 | 1% | 1 |

| 17 | ST JOAN OF ARC CHURCH | 545 | 58% | 391 | 42% | 0 | 0% | 1 |
|---|---|---|---|---|---|---|---|---|
| 18 | MOBILE CIVIC CENTER | 414 | 73% | 153 | 27% | 1 | 0% | 1 |
| 19 | ROCK OF FAITH BAPTIST CHURCH | 1,196 | 85% | 215 | 15% | 2 | 0% | 1 |
| 23 | WHISTLER UNITED METH. CH. | 281 | 73% | 103 | 27% | 1 | 0% | 1 |
| 24 | MT. CAVLARY BAPTIST CHURCH | 644 | 88% | 87 | 12% | 0 | 0% | 1 |
| 25 | OLD BLOUNT HIGH SCHOOL | 863 | 87% | 132 | 13% | 0 | 0% | 1 |
| 26 | MT SINAI MISSIONARY BAPTIST | 603 | 84% | 119 | 16% | 0 | 0% | 1 |
| 27 | EIGHT MILE SCHOOL | 761 | 68% | 351 | 32% | 1 | 0% | 1 |
| 30 | COLLEGE PARK BAPTIST | 318 | 43% | 428 | 57% | 1 | 0% | 1 |
| 32 | TRINITY LUTHERAN CHURCH | 267 | 84% | 52 | 16% | 0 | 0% | 1 |
| 33 | PRICHARD CITY HALL | 201 | 80% | 48 | 19% | 1 | 0% | 1 |
| 35 | LEFLORE HIGH SCHOOL | 601 | 87% | 89 | 13% | 0 | 0% | 1 |
| 36 | ARIEL W HOLLOWAY SCHOOL | 1,835 | 88% | 243 | 12% | 2 | 0% | 1 |
| 37 | BOYS CLUB OF MOBILE | 515 | 85% | 92 | 15% | 1 | 0% | 1 |
| 39 | ELIZABETH S CHASTANG SCHOOL | 339 | 83% | 69 | 17% | 0 | 0% | 1 |
| 59 | CITRONELLE NATL GUARD ARMORY | 335 | 32% | 721 | 68% | 1 | 0% | 1 |
| 68 | WHITLEY SCHOOL | 286 | 85% | 50 | 15% | 0 | 0% | 1 |
| 69 | PLATEAU COMMUNITY CTR | 330 | 89% | 42 | 11% | 0 | 0% | 1 |
| 70 | ST FRANCIS XAVIER | 512 | 87% | 74 | 13% | 2 | 0% | 1 |
| 71 | MOBILE CITY FEDERATION/WOMEN | 315 | 88% | 45 | 13% | 0 | 0% | 1 |
| 77 | MAE EANES SCHOOL | 987 | 84% | 191 | 16% | 3 | 0% | 1 |

| Total | District 1 | 15,705 | 60% | 10,475 | 40% | 50 | 0% | |
|---|---|---|---|---|---|---|---|---|
| 7 | HAVENWOOD BAPTIST CHURCH | 71 | 21% | 274 | 79% | 0 | 0% | 2 |
| 28 | AZALEA CITY CH OF CHRIST | 141 | 23% | 457 | 76% | 3 | 0% | 2 |
| 29 | INDIAN SPRINGS BAPTIST (ED BLDG) | 121 | 30% | 283 | 70% | 0 | 0% | 2 |
| 40 | LITTLE WELCOME BAPTIST | 541 | 52% | 488 | 47% | 6 | 1% | 2 |
| 41 | MOFFETT ROAD ASSEMBLY OF GOD | 894 | 42% | 1,234 | 58% | 8 | 0% | 2 |
| 42 | HILLSDALE COMMUNITY CENTER | 251 | 75% | 82 | 25% | 0 | 0% | 2 |
| 44 | MOBILE MUSEUM OF ART | 160 | 14% | 954 | 85% | 7 | 1% | 2 |
| 45 | ST JOHN UNITED METHODIST | 344 | 37% | 578 | 63% | 1 | 0% | 2 |
| 46 | UNIVERSITY CHURCH OF CHRIST | 308 | 44% | 385 | 55% | 3 | 0% | 2 |
| 47 | HILLCREST BAPTIST CHURCH | 722 | 23% | 2,406 | 77% | 14 | 0% | 2 |
| 48 | OUR SAVIOR CATHOLIC CHURCH | 784 | 25% | 2,312 | 74% | 9 | 0% | 2 |
| 51 | ST IGNATIUS CHURCH (MARIAN CTR) | 137 | 14% | 872 | 86% | 1 | 0% | 2 |
| 52 | E.R. DICKSON ELEMENTARY SCH | 286 | 13% | 1,961 | 87% | 1 | 0% | 2 |
| 53 | FIRST ASSEMBLY OF GOD | 346 | 31% | 762 | 68% | 8 | 1% | 2 |
| 54 | COMMUNITY OF CHRIST CHURCH | 319 | 37% | 548 | 63% | 1 | 0% | 2 |
| 55 | KATE SHEPARD SCHOOL | 252 | 20% | 1,005 | 80% | 4 | 0% | 2 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 56 | FIRST INDEPENDENT METH CHURCH | 294 | 21% | 1,091 | 78% | 7 | 1% | 2 |
| 57 | WESTLAWN ELEMENTARY SCHOOL | 468 | 40% | 710 | 60% | 4 | 0% | 2 |
| 58 | PLEASANT VALLEY METHODIST | 268 | 31% | 600 | 69% | 3 | 0% | 2 |
| 61 | FELLOWSHIP BAPTIST CHURCH | 68 | 25% | 206 | 75% | 0 | 0% | 2 |
| 62 | GEORGETOWN BAPTIST CHURCH | 149 | 22% | 514 | 77% | 2 | 0% | 2 |
| 63 | FIRST BAPTIST CH/WILMER | 162 | 20% | 642 | 79% | 7 | 1% | 2 |
| 64 | SEMMES COMMUNITY CTR | 488 | 19% | 2,136 | 81% | 13 | 0% | 2 |
| 66 | TANNER WILLIAMS HIST SOC BLDG | 84 | 16% | 455 | 84% | 2 | 0% | 2 |
| 84 | MOBILE CO LAW ENF AGENCY | 59 | 18% | 269 | 82% | 0 | 0% | 2 |
| 85 | DODGE SCHOOL | 513 | 23% | 1,677 | 76% | 9 | 0% | 2 |
| 86 | CRANFORD BURNS SCHOOL | 614 | 30% | 1,424 | 70% | 4 | 0% | 2 |
| Total | District 2 | 8,844 | 27% | 24,325 | 73% | 117 | 0% | |
| 13 | MARY ABBIE BERG SR CENTER | 325 | 29% | 789 | 70% | 6 | 1% | 3 |
| 15 | MURPHY HIGH SCHOOL LIBRARY | 132 | 26% | 382 | 74% | 2 | 0% | 3 |
| 20 | ELKS LODGE #108 | 523 | 62% | 319 | 38% | 1 | 0% | 3 |
| 21 | PALMER PILLANS MIDDLE SCHOOL | 202 | 36% | 363 | 64% | 2 | 0% | 3 |
| 43 | FRIENDSHIP BAPTIST CHURCH | 118 | 77% | 35 | 23% | 0 | 0% | 3 |
| 49 | CREEKWOOD CHURCH OF CHRIST | 692 | 19% | 2,901 | 81% | 10 | 0% | 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 50 | AUGUSTA EVANS SCHOOL | 220 | 28% | 573 | 72% | 3 | 0% | 3 |
| 65 | JON ARCHER AGRICULTURAL CTR | 259 | 18% | 1,159 | 82% | 3 | 0% | 3 |
| 67 | ABBA TEMPLE SHRINE AUDITORIUM | 893 | 21% | 3,386 | 79% | 13 | 0% | 3 |
| 73 | WEST SIDE UNITED METH | 128 | 30% | 290 | 69% | 2 | 0% | 3 |
| 76 | MORNINGSIDE SCHOOL | 741 | 60% | 496 | 40% | 3 | 0% | 3 |
| 78 | TILLMAN'S CORNER COMMUNITY CTR | 382 | 18% | 1,682 | 81% | 6 | 0% | 3 |
| 79 | HOLLINGERS ISLAND SCHOOL | 128 | 18% | 563 | 81% | 6 | 1% | 3 |
| 80 | ST PHILLIP NERI CHURCH | 212 | 23% | 717 | 77% | 8 | 1% | 3 |
| 81 | RIVERSIDE CHURCH OF THE NAZARENE | 128 | 32% | 275 | 68% | 1 | 0% | 3 |
| 82 | ST ANDREWS EPISCOPAL CHURCH | 297 | 37% | 507 | 63% | 2 | 0% | 3 |
| 83 | NAVCO BAPTIST CHURCH | 37 | 16% | 189 | 84% | 0 | 0% | 3 |
| 87 | TRAVIS ROAD BAPTIST CHURCH | 197 | 17% | 956 | 82% | 10 | 1% | 3 |
| 88 | FIRST BAPTIST CHURCH OF THEODORE | 568 | 38% | 927 | 62% | 4 | 0% | 3 |
| 89 | ST MICHAEL CATHOLIC CHURCH | 133 | 22% | 469 | 78% | 0 | 0% | 3 |
| 90 | CHARLES HAYNES LODGE NO. 627 | 100 | 32% | 217 | 68% | 0 | 0% | 3 |
| 91 | IRVINGTON FIRST BAPTIST | 306 | 26% | 836 | 72% | 13 | 1% | 3 |
| 92 | MEADOWLAKE ELEMENTARY SCHOOL | 287 | 23% | 977 | 77% | 4 | 0% | 3 |
| 93 | UNION BAPTIST CHURCH | 165 | 21% | 626 | 78% | 8 | 1% | 3 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 94 | GRAND BAY MIDDLE SCHOOL | 391 | 24% | 1,205 | 75% | 7 | 0% | 3 |
| 95 | ODD FELLOWS LODGE | 263 | 26% | 759 | 74% | 8 | 1% | 3 |
| 96 | CODEN COMMUNITY HOUSE | 90 | 28% | 228 | 71% | 4 | 1% | 3 |
| 97 | DAUPHIN ISL CHAMBER OF COMM | 137 | 26% | 381 | 73% | 1 | 0% | 3 |
| Total | District 3 | 8,054 | 27% | 22,207 | 73% | 127 | 0% | |
| 74 | RICKARBY PARK | 1,005 | 69% | 447 | 31% | 3 | 0% | Split 1&3 |
| 100 | Absentee | 590 | 32% | 1,236 | 67% | 10 | 1% | |