IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| YVONNE KENNEDY, JAMES BUSKEY, AND WILLIAM CLARK,<br><br>        Plaintiffs,<br><br>  v.<br><br>HONORABLE BOB RILEY, as Governor of the State of Alabama,<br><br>        Defendant. | CIVIL ACTION NO.<br>2:05-cv-01100-MHT-DRB |

# Plaintiffs' Motion for Reconsideration of Order (Doc. 37)

      1. The final judgment in this action provided in part: "The State of Alabama has 90 days from the date of this order to obtain preclearance in accordance with § 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; if the State fails to comply with this requirement within the time allowed, the court will revisit the issue of remedy." That judgment was entered on 18 August 2006. Ninety days from that date was 16 November 2006.

      2. Less than one week before the 90-day deadline, the State of Alabama requested preclearance of the two Alabama Supreme Court decisions by submission to the Attorney General of the United States. On 8 January 2007, Wan J. Kim, the Assistant Attorney General for Civil Rights, interposed an objection to the enforcement of the two decisions. A copy of the letter of objection was attached as Exhibit A to Doc. 35.

## The Court Should Reconsider the Stay

3. The State of Alabama now takes the following position (Doc. 36, ¶ 1):

> Governor Riley maintains his position that preclearance [sic: denial of preclearance] cannot make an invalid State law valid, and, accordingly, that preclearance should not be required and Plaintiffs are entitled to no relief. Governor Riley further maintains his position that serious constitutional concerns are raised by the requirement that the State of Alabama seek preclearance of the decisions in Riley v. Kennedy and Stokes v. Noonan and by the prospect of granting the Plaintiffs relief in the event that preclearance cannot be achieved.

4. In short, the Governor's position is "the preclearance process is fine as long as everything is decided in my favor; it is unconstitutional if it goes against me."

5. The Governor now announces that he will continue to run out the clock by requesting reconsideration from the Department of Justice and then "may pursue judicial preclearance." (Doc. 36, ¶ 3)

6. The Governor also "request[ed] that this Court refrain from taking any action as to remedy until the USDOJ has responded to the State's request for reconsideration." (Doc. 36, ¶ 2).

7. Without requesting or waiting for a response from the plaintiffs, the Court granted the Governor's "request" and allowed "The State of Alabama … additional time to seek timely reconsideration of the decision of the United States Department of Justice …."

8. Since the Department of Justice's Section 5 regulations provide, "The submitting authority may **at any time** request the Attorney General to

reconsider an objection," 28 CFR § 51.45, there is no way to judge "timeliness" of a request for reconsideration.

      9. The plaintiffs have already waited 147 days for a process that was supposed to be over within 90 days. Now the Governor asks for an unlimited amount of time to continue denying the plaintiffs the rights guaranteed to them by the Voting Rights Act.

      10. With the preclearance process of § 5, Congress "shift[ed] the advantage of time and inertia from the perpetrators of the evil to its victims." *South Carolina v. Katzenbach,* 383 U.S. 301, 328 (1966). *See also*, *Morse v. Republican Party of Virginia,* 517 U.S. 186, 213 (1996) ("The preclearance system of § 5 was designed to end this evasion once and for all. **By prohibiting officials in covered jurisdictions from implementing** any change in voting practices without prior approval from the District Court for the District of Columbia or the Attorney General, it sought to 'shift the advantage of time and inertia from the perpetrators of the evil to its victims.' *South Carolina v. Katzenbach,* 383 U.S., at 328, 86 S.Ct., at 818.") (emphasis added).

      11. Section 5 is designed to prohibit enforcement of a change before it has been precleared. The Court in *Beer v. United States,* 425 U.S. 130 (1975), explained the purpose of this "freezing" principle:

> By prohibiting the enforcement of a voting-procedure change until it has been demonstrated to the United States Department of Justice or to a three-judge federal court that the change does not have a discriminatory effect, Congress desired to prevent States from "undo(ing) or defeat(ing) the rights recently won" by Negroes. H.R.Rep.No.91-397, p. 8, U.S.Code Cong. & Admin.News

3

> 1970, p. 3284. Section 5 was intended "to insure that (the gains thus far achieved in minority political participation) shall not be destroyed through new (discriminatory) procedures and techniques." S.Rep.No.94-295, p. 19, U.S.Code Cong. & Admin.News 1975, p. 785.

*Beer*, at 140-41. *See also,* Mark A. Posner, "The Real Story Behind the Justice Department's Implementation of Section 5 of the VRA: Vigorous Enforcement, As Intended by Congress," 1 *Duke J. Const. L. & Pub. Pol'y* 120, 129 (2006) ("Thus, under the Section 5 regime, discriminators no longer can simply design and implement new methods of discrimination to stay a step ahead of legal or political challenges to an existing discriminatory practice. They must pass each new provision through the federal preclearance screen.")

12. For the foregoing reasons, the Court's order (Doc. 37) denying plaintiffs' motion for a special election and granting the request for a stay was in error and should be vacated.

### Renewed Motion for Special Election

13. Act 85-237 was the benchmark against which the Section 5 preclearance submission was measured (Joint Stipulation of Facts, Doc. 14, Exhibit A). Thus the United States' objection to the submission means that Act 85-237 is once again the governing standard.

14. Act 85-237 requires in part: "Whenever a vacancy occurs in any seat on the Mobile County Commission with twelve months or more remaining on the term of the vacant seat, the judge of probate shall immediately make provisions for a special elections to fill such vacancy with such election to be held no soon than sixty days and no later than ninety days after such seat has become vacant."

4

15.  Plaintiffs move the Court to grant the following relief:

   a.  Enjoin Governor Riley to call a special election in County Commission District 1 of Mobile for the election of a commissioner to fill the unexpired term of Commissioner (now Mayor) Sam Jones.

   b.  Order that such election be held not less than 60 nor more than 90 days from the date of the order of the Court.

   c.  Enjoin the Governor and officials acting in concert with him to obey the provisions of Ala. Code §§ 17-18-3, -5, -6, and -7 (1995).

   d.  Further enjoin all officials who normally participate in the preparation for special elections and who are acting in concert with the Governor to do all such acts as may be necessary to hold such election, count and tabulate the votes, and certify the results of such election.

16.  **In the alternative,** Plaintiffs pray that the Court grant the following relief:

   a.  Enter a declaratory judgment that the seat formerly held by Hon. Sam Jones is "vacant" within the meaning of Act 85-237;

   b.  Add the Honorable Don Davis in his official capacity as Probate Judge of Mobile County as a defendant for the limited purpose of calling a special election.  (Upon the Court's approval, the Plaintiffs will serve process upon Judge Davis.)

   c.  Enter an injunction directed to Hon. Don Davis, Probate Judge of Mobile County, requiring him to call a special election in District 1 no sooner than sixty days and no later than ninety days to fill the vacancy;

17.  Plaintiffs further pray the Court to order that the winner of the special election may take office immediately upon his or her certification and filing the usual and necessary instruments, bonds, oaths, etc.

18.  Plaintiffs further pray for an award of reasonable attorneys' fees and expenses for the work performed by the Plaintiffs' counsel after allowing the Plaintiffs' counsel to supplement their earlier fee petition within a reasonable time.

Submitted by,

| | |
|---|---|
| Cecil Gardner | /s/ Edward Still |
| Vance McCrary | Edward Still |
| Gardner, Middlebrooks, Gibbons & Kittrell | 2112 11th Avenue South |
| | Suite 201 |
| Post Office Drawer 3103 | Birmingham AL 35205-2844 |
| Mobile AL 36652 | phone: 205-320-2882 |
| phone 251.433.8100 | fax: 877-264-5513 |
| fax 251.433.8181 | email: Still@votelaw.com |
| email cgardner@gmlegal.com | |
| email vmccrary@gmlegal.com | |

CERTIFICATE OF SERVICE

  I certify that on 12 January 2007 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following attorneys:

John J. Park, Jr. Esq.
Assistant Attorney General
Office of the Attorney General of
Alabama
11 South Union Street
Montgomery AL 36130-0152
  phone: 334-242-7401
  fax: 334-242-4891
  email: jpark@ago.state.al.us


          <u>/s/ Edward Still</u>