# Exhibit A



**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**

TROY KING
ATTORNEY GENERAL

ALABAMA STATE HOUSE
11 SOUTH UNION STREET
MONTGOMERY, AL 36130
(334) 242-7300
WWW.AGO.STATE.AL.US

January 30, 2007

Honorable Alberto R. Gonzales
United States Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530

RE:    **Request for reconsideration pursuant to 28 C.F.R. § 51.45**

Dear General Gonzales:

By letter dated January 8, 2007, Assistant Attorney General Wan J. Kim, exercising the authority delegated to him, *see* 28 C.F.R. § 51.3, interposed an objection to the State of Alabama's enforcement of two decisions of the Alabama Supreme Court, Stokes v. Noonan, 534 So. 2d 237 (Ala. 1988), and Riley v. Kennedy, 928 So. 2d 1013 (Ala. 2005). Pursuant to 28 C.F.R. § 51.45, I request reconsideration of the objection.

As I will explain below, these two decisions by the State's highest court were based on generally-applicable, race-neutral principles. Those principles, which were fairly and properly applied, happened to have been applied in the context of election issues, specifically how vacancies on the Mobile County Commission will be filled. By its objection letter, the United States Department of Justice (USDOJ) has essentially declared that Justice Department preclearance supplants the State's Constitution to the extent that, if a law is precleared and later found to be violative of the State Constitution, the preclearance would prevail and leave in effect that otherwise unconstitutional law. This objection, therefore, in essence would override the decisions of the State's highest court and order that Alabama revert to following a law that was declared unconstitutional in Stokes v. Noonan, that was found not to have been revived in Riley v. Kennedy, and that has been very briefly enforced only once. As the State has made clear in its submission letter, denying preclearance is an affront to the State's sovereignty and federalism itself, and it invites chaos in State governmental functioning. In contrast, granting preclearance demonstrates respect for the State's judiciary and for its Legislature. In other words, as I will show, the State has provided the right way to solve the problem, but USDOJ will not let it proceed.

Request for Reconsideration
January 30, 2007
Page 2

In this letter, I will set forth the relevant facts necessary for a proper understanding of the question presented to USDOJ. Then, I will explain why preclearance can and should be granted.[1]

## BACKGROUND

The State's submission relates to the method of filling vacancies on county commissions. The two decisions submitted for preclearance, Riley v. Kennedy, 928 So. 2d 1013 (Ala. 2005), and Stokes v. Noonan, 534 So. 2d 237 (Ala. 1988), each specifically deal with the Mobile County Commission, though these decisions of the Alabama Supreme Court, like all other decisions of that Court, are applicable throughout the State. To understand the decisions, however, we must necessarily focus, to some extent, on the Mobile County Commission.

### Code of 1852 to Code of 1940—General Law

As to "The Court of County Commissioners," the 1852 Code of Alabama provided that "[i]n case of a vacancy, it is to be filled by the court, and the person so appointed holds office for the remainder of the term of the commissioner in whose place he is appointed." Code 1852, § 698. The law was the same when the Revised Code of Alabama was published in 1867. See Code 1867, § 826.

By 1876, a change had occurred: the Governor rather that the Court of County Commissioners would make the appointment to fill any vacancy. Code 1876, § 740 ("In case of a vacancy, it is to be filled by the governor, and the person so appointed holds office for the remainder of the term of the commissioner in whose place he is appointed."). A notation in the 1876 Code suggests that the change dated back to November 25, 1868. The Codes of 1886, 1896, 1907, 1923 and 1940 each continued to provide that "[i]n case of a vacancy, it is to be filled by the governor, and the person so appointed holds office for the remainder of the term of the commissioner in whose place he is appointed." Code 1886, § 820; Code 1896, § 952; Code 1907, § 3307; Code 1923, § 6749; Code 1940, T.12, § 6.

---

[1]     Other interested parties submitted comments to USDOJ to consider in deciding whether to preclear Riley v. Kennedy and Stokes v. Noonan. Additionally USDOJ solicited input from certain individuals. The comments and input may have created confusion and thereby contributed to a misunderstanding of the change submitted for preclearance and the relevant facts. In this letter, I will endeavor to clear up the confusion and to restate the scope of the change in a way that will make it clear that the objection is due to be withdrawn.

Request for Reconsideration
January 30, 2007
Page 3

## Act No. 181, 1957 Regular Session—Creation of Mobile County Commission: Gubernatorial Appointment

In August 1957, Act No. 181 of the 1957 Regular Session of the Alabama Legislature was enacted. Pursuant to Act No. 181, the Mobile County Commission was to come into existence in January 1961 to replace the then-existing board of revenue and road commissioners. Section 2 of Act No. 181 concerned how commissioners were selected and how any vacancies were to be filled. It provided that the commissioners were to be elected to four-year terms and that "Vacancies on the commission shall be filled by appointment by the Governor, but the office of president of the commission shall be filled by the members thereof. Any person appointed to fill a vacancy shall serve the unexpired term, and until his successor is elected and qualified." Act No. 181 § 2(b), 1957 Regular Session of the Alabama Legislature.

## The Voting Rights Act of 1965

On August 6, 1965, the Voting Rights Act of 1965 was enacted. Pursuant to that Act, Alabama is a covered jurisdiction for Section 5 purposes. By its terms, Section 5 prohibits certain States and localities, including Alabama, from "enact[ing] or seek[ing] to administer any voting qualification or prerequisite to voting, or standard, practice or procedure with respect to voting different from that in force or effect" on the "applicable date," unless the jurisdiction obtains preclearance. 42 U.S.C. § 1973c.

Alabama's "applicable date" is November 1, 1964. On that date, vacancies on county commissions, including the Mobile County Commission, were filled by gubernatorial appointment.

## Ala. Code § 11-3-6—Alabama General Law: Gubernatorial Appointment

Ten years passed and the Code of Alabama 1975 was published. The general law concerning vacancies on county commissions that was previously codified at Code 1940, T.12, § 6 was recodified as Ala. Code § 11-3-6. Over the years, there apparently were minor changes in the wording, as, in the 1989 Supplement, Ala. Code § 11-3-6 provided: "In case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed." Ala. Code § 11-3-6 (1989); cf. Code 1940, T.12, § 6 ("In case of a vacancy, it is to be filled by the governor, and the person so appointed holds office for the remainder of the term of the commissioner in whose place he is appointed.").

## Act No. 85-237—Local Law: Special Election

Another ten years passed, and the law continued to be that vacancies on the Mobile County Commission were to be filled by gubernatorial appointment. Against this background, Act No. 85-237 was enacted on April 8, 1985. Act No. 85-237 was a local Act, in that it applied only to Mobile County and not to the State as a whole.

Request for Reconsideration
January 30, 2007
Page 4

In pertinent part, Act No. 85-237 provided as follows:

> Whenever a vacancy occurs in any seat on the Mobile County Commission with twelve months or more remaining on the term of the vacant seat, the judge of probate shall immediately make provisions for a special election to fill such vacancy with such election to be held no sooner than sixty days and no later than ninety days after such seat has become vacant. Such election shall be held in the manner prescribed by law and the person elected to fill such vacancy shall serve the remainder of the unexpired term.

Act No. 1985-237.

On April 15, 1985, one week after Act No. 85-237 was enacted, the State of Alabama routinely submitted the new Act for review pursuant to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. The submission was brief, and it apparently considered only Act No. 181 of the 1957 Alabama Legislature, which had created the Mobile County Commission, and not the generally applicable law then codified at Ala. Code § 11-3-6 or the Alabama Supreme Court's decision in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978).[2] In paragraph (b), the submission explained:

> By the Act under which the Mobile County Commission was created, Act No. 181, 1957 Regular Session of the Alabama Legislature (a copy of which is enclosed), a vacancy in the office of County Commissioner was filled by appointment of the Governor. (See Section 2(b) of Act NO. 188 [sic]). Under Act No. 85-237 such vacancies will be filled by calling a special election.

Submission letter, 1 (April 15, 1985). In paragraph (k), the submission reiterated that the "[c]hange will affect how a vacancy in the Office of County Commissioner of Mobile County is filled." Id. at 2. By letter dated June 17, 1985, the State was advised that the Attorney General had no objection.

---

[2]    This statement is intended as one of fact and not blame. Alabama passes a great many general and local laws that fall within the scope of Section 5 review. Over the years, the task of locating, understanding, explaining, and submitting the general laws, and sometimes the local laws, has fallen on lawyers within the Attorney General's Office, who must complete these tasks in addition to their regular duties. Additionally, over the years, the standard for these submissions has risen, though never more so than with the federal court's decision in Kennedy v. Riley, 445 F.Supp.2d 1333 (M.D.Ala. 2006) (three-judge court), discussed below. Prior to that decision, the State had sought to describe the change wrought by the law, as best as that could be ascertained at the time of the submission, and that proved challenging enough as will be seen. The State generally did not anticipate challenges to the changes under State law, unless litigation was already pending or had been threatened. Now, under Kennedy v. Riley, it might well be necessary to test the constitutionality and general soundness of any change under State law before that change can be submitted for Section 5 review.

Request for Reconsideration
January 30, 2007
Page 5

## Stokes v. Noonan

The first time that Act No. 1985-237 was ever to be implemented, that is, the first time that a vacancy on the Mobile County Commission was ever to be filled by a special election, Act No. 1985-237 was challenged in State court and found to be unconstitutional. <u>See</u> <u>Stokes v. Noonan</u>, 534 So. 2d 237 (Ala. 1988).

In 1987, just two years after the enactment of Act No. 1985-237, a vacancy occurred in one of the seats on the Mobile County Commission. In April of that year, Willie H. Stokes, a voter in Mobile County, filed suit against Lionel W. "Red" Noonan, in his official capacity as the Probate Judge for Mobile County. The lawsuit was filed in the Circuit Court of Mobile County. The Circuit Court denied relief, and the vacancy was filled by special election. Samuel L. Jones, who is African-American, won the election, but the lawsuit was not over.

On appeal, in a decision dated September 30, 1988, the Alabama Supreme Court agreed with Plaintiff Stokes that Act No. 85-237 was unconstitutional. The Court explained the constitutional arguments and its holding as follows[3]:

> Stokes contends that the subject of local Act No. 85-237 is subsumed by a general law, § 11-3-6, Code of 1975, and therefore, under Art. IV, § 105, Constitution 1901, and this Court's decision in <u>Peddycoart v. City of Birmingham</u>, 354 So.2d 808 (Ala.1978), is unconstitutional.

> Section 105, in pertinent part, states: "No special, private, or local law . . . shall be enacted in any case which is provided by a general law." Section 11-3-6, Code of 1975, is contained in the chapter pertaining to county commissions and refers to vacancies:

> "In case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed."

> Stokes also contends that Act No. 85-237 violates Art. IV, § 104(29), Constitution of 1901, which states, in pertinent part:

> "The legislature shall not pass a special, private, or local law in any of the following cases:

> ". . . .

---

[3]   While lengthy block quotes are generally disfavored, I think it important not to simply assert that the Alabama Supreme Court was relying on generally-applicable, race-neutral principles, but to affirmatively demonstrate that fact by reproducing the Court's reasoning.

"(29) Providing for the conduct of elections or designating places of voting, or changing the boundaries of wards, precincts, or districts, except in the event of organization of new counties, or the changing of the lines of old counties. . . ."

We need not address the plaintiff's attacks under § 104(29) because we are convinced that Act No. 85-237 clearly offends § 105 of the Constitution of 1901.

In Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978), this Court explained at length the difference between a local law and a general law, and, applying the literal language of the Constitution of 1901, held that the presence of a general law upon a given subject was primary, meaning "that a local law cannot be passed upon that subject." This Court added at 813:

"By constitutional definition a general law is one which applies to the whole state and to each county in the state with the same force as though it had been a valid local law from inception. Its passage is none the less based upon local considerations simply because it has a statewide application, and already having that effect, the constitutional framers have prohibited the enactment of a local act when the subject is already subsumed by the general statute."

Section 11-3-6 is a statewide statute governing the general subject of filling vacancies on county commissions. Its language is substantially the same as its complementary section that appeared in Ala. Code 1940 as Title 12, § 6. See also Ala. Code 1940, Title 12, § 6 (Recomp.1958).

Act No. 85-237 was approved April 8, 1985. By its terms, it is made applicable only to Mobile County. Hence, when it became law it applied to a political subdivision of the state less than the whole, and thus, it was a local law on the same subject as the previously enacted general law, § 11-3-6; see Constitution of 1901, § 110; Peddycoart, 354 So.2d at 814; and, accordingly, it is unconstitutional under § 105. We cannot, therefore, agree with the defendant that the Mobile County Commission, because of statutory history, has always been, and therefore is still, governed by local law. To approve such a proposition here would run directly counter to the language of our constitution. Surely, it cannot be held that the legislature is proscribed from enacting general laws on subjects already covered by local laws, even if by application such local laws are repealed, when the intent of the legislature is clear-and it is in this case. See Buskey v. Mobile County Board of Registrars, 501 So.2d 447 (Ala.1986).

Request for Reconsideration
January 30, 2007
Page 7

Stokes v. Noonan, 534 So.2d at 238-39 (all alterations in original).

Thus, relying on generally-applicable, race-neutral principles, the Alabama Supreme Court held that Act No. 85-237 violated article IV, § 105 of the Alabama Constitution. Given that holding, the Alabama Supreme Court declined to reach Stokes' argument that the Act also violated Article IV, § 104(29).

Note too that, the Alabama Supreme Court expressly rejected the argument that Act No. 181, 1957 Regular Session of the Alabama Legislature—the local law that created the Mobile County Commission—had any impact on the resolution of this case. Stokes v. Noonan, 534 So.2d at 238 ("We cannot, therefore, agree with the defendant that the Mobile County Commission, because of statutory history, has always been, and therefore is still, governed by local law."). As explained above, Act No. 181 is the only preexisting law that had been considered in the submission of Act No. 85-237 for Section 5 review. The submission had not considered Ala. Code § 11-3-6, which is the generally applicable law calling for gubernatorial appointments, or the Alabama Supreme Court's decisions in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala.1978) and Buskey v. Mobile County Board of Registrars, 501 So.2d 447 (Ala.1986). In short, the Alabama Supreme Court, upon thoughtful consideration and aided by the briefs of the parties and case law that post-dated the submission of Act No. 85-237 (namely, Buskey), viewed the question entirely differently than the Attorney General had.

## Appointing Samuel L. Jones

The Alabama Supreme Court's ruling created a vexing issue of State law. Without a valid election, the incumbent, Samuel L. Jones, who is African-American, had no right to hold the office and was vulnerable to a quo warranto action.[4] Then-Governor Guy Hunt solved the problem by exercising his power of appointment, pursuant to the

---

[4]    "Quo warranto" is "[a] common-law writ used to inquire into the authority by which a public office is held or a franchise is claimed." Black's Law Dictionary 1264 (7th ed. 199). Such an action is authorized by statute in Alabama. See Ala. Code § 6-6-591. In pertinent part, Ala. Code § 6-6-591 provides as follows:

     (a) An action may be commenced in the name of the state against the party offending in the following cases:

     (1) When any person usurps, intrudes into or unlawfully holds or exercises any public office, civil or military, any franchise, any profession requiring a license, certificate, or other legal authorization within this state or any office in a corporation created by the authority of this state;

          . . . .

Ala. Code § 6-6-591(a)(1) (emphasis added). The statute has not been substantively altered since at least 1940.

general law then embodied in Ala. Code § 11-3-6 (1989) (amended 2004), to appoint Mr. Jones to the position.

In other words, the only time that a special election was ever conducted to fill a vacancy on the Mobile County Commission, it was conducted under the cloud of litigation. When the litigation was finally resolved, the State's highest court had held the law purporting to authorize the election (Act No. 85-237) unconstitutional. <u>Stokes v. Noonan</u>. Thereafter, reverting to the long-standing general law of gubernatorial appointment, an African-American individual, Mr. Jones, was appointed to fill the vacancy.

Mr. Jones ran for election when his initial term expired and continued to serve on the Mobile County Commission for approximately eighteen years, until 2005.

### Scope of <u>Stokes v. Noonan</u>

Mobile County was not the only county with a local law purporting to authorize a special election to fill a vacancy on a county commission at the time that <u>Stokes v. Noonan</u> was decided. The State is aware of similar local acts in Jefferson County (Act No. 77-784), Randolph County (Act No. 80-291), Houston County (Act No. 86-174), Macon County (Act No. 87-527) and Etowah County (Act No. 88-790). The Macon County law applied only to the election of the Chairman of the County Commission in 1987, so it should be regarded as *sui generis*. While only the Mobile County local law, Act No. 85-237, was at issue in the decision of <u>Stokes v. Noonan</u>, the State believes that, when it was decided, <u>Stokes v. Noonan</u> cast a pall over the other local laws, rendering them vulnerable to the same kind of challenge. That is, each local law was vulnerable to a challenge that it violated article IV, § 105 of the Alabama Constitution because it was a local law purporting to govern a subject—the filling of vacancies on county commissions—subsumed by general law, Ala. Code § 11-3-6.

### Act No. 2004-455: Authorizing Local Laws

In 2004 the Alabama Legislature amended the general law governing vacancies, Ala. Code § 11-3-6, set out above, when it passed Act No. 2004-455. As amended, the statute provides that vacancies on county commissions are to be filled by gubernatorial appointment "[u]nless a local law authorizes a special election." Ala. Code § 11-3-6 (Supp. 2004).[5] Governor Riley signed the law on May 14, 2004.

---

[5]    In its entirety, Ala. Code § 11-3-6 now provides: "Unless a local law authorizes a special election, in the case of a vacancy, it shall be filled by appointment by the Governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he or she is appointed." Ala. Code § 11-3-6 (2006 Supp.).

Request for Reconsideration
January 30, 2007
Page 9

Thereafter, on August 9, 2004, the new Act was submitted for Section 5 review. The submission explained that Act No. 2004-455 "ma[de Ala. Code §11-3-6] more gender-inclusive [and] provide[d] that gubernatorial appointment in case of vacancies in the office of county commissioner applies only where local law does not provide for a special election to fill a vacancy." Submission letter, 1 (August 9, 2004). The submission stated that "Act [No.] 2004-455 affects the entire State of Alabama" and explained that the Act "was adopted to permit local law to provide for special elections to fill vacancies in the office of county commissioner." Id. at 2. The submission made no mention of whether Act No. 2004-455 would apply prospectively or retroactively.

The submission did refer to the Stokes v. Noonan decision. Specifically, the submission stated as follows:

> In Stokes v. Noonan, 534 So. 2d 237, 239 (Ala. 1988), the Supreme Court held unconstitutional a local law providing for a special election to fill vacancies on the Mobile County Commission because the local law conflicted with the general law in section 11-3-6. This amendment will allow local law to provide for special elections to fill vacancies in the office of county commissioner under the holding in Baldwin County v. Jenkins, 494 So. 2d 584, 587 (Ala. 1986).

Submission letter, 2 (August 9, 2004). Still, this says nothing about whether Act No. 2004-455 will validate currently existing local laws, or whether it only authorizes the enactment of new local laws.

By letter dated September 28, 2004, the State was advised that the Attorney General had no objection to the proposed change. See DOJ File No. 2004-3515.

## Samuel L. Jones Vacates His Seat

A vacancy arose on the Mobile County Commission in September 2005, when Samuel L. Jones, an incumbent commissioner, was elected Mayor of Mobile. Mr. Jones was the very same individual who had been appointed to the Commission after Act No. 85-237 was held unconstitutional and his right to hold the seat pursuant to the special election was threatened.

With the vacancy, the method of filling it became an issue once again. Some contended that the vacancy was to be filled through a special election, pointing to Act 85-237 and arguing that it had been revived by Act No. 2004-455. Others contended that, with the declaration that Act No. 85-237 was unconstitutional in Stokes v. Noonan, the vacancy was to be filled by gubernatorial appointment pursuant to the general law, Ala. Code § 11-3-6.

Request for Reconsideration
January 30, 2007
Page 10

## Riley v. Kennedy: State Court Litigation

Three plaintiffs, Yvonne Kennedy, James Buskey, and William Clark, filed suit in the Circuit Court of Montgomery County seeking declaratory and injunctive relief. They sought a declaration that the vacancy was due to be filled through a special election and an injunction directing the probate judge of Mobile County to conduct one. Governor Riley was among those named as a defendant. My Office defended the litigation, contending that, with the declaration that Act 85-237 was unconstitutional in Stokes v. Noonan, the Governor was empowered to fill the vacancy by appointment. The Circuit Court ruled in favor of the plaintiffs, and Governor Riley appealed.

Even though the appeal was expedited, the local election officials had to move quickly and asked USDOJ to preclear a special election calendar that included a primary election on November 22, 2005, a run-off election on December 13, 2005, and a general election on January 3, 2006. The local election officials needed the approval of USDOJ in order to start the election machinery. By letter dated October 25, 2005, my Office suggested that USDOJ withhold action on the submittal pending the outcome of the litigation in state court. My Office pointed out that the proceedings in the Supreme Court of Alabama had been expedited and that withholding action was consistent with 28 C.F.R. § 51.22.[6] Disregarding this direction, USDOJ declined to withhold action and interposed no objection to the proposed special election.

On appeal, the Supreme Court of Alabama reversed the judgment of the Circuit Court. Riley v. Kennedy, 928 So.2d 1013 (Ala. 2005). The Court explained the arguments, the holding in Stokes v. Noonan, and its new holding as follows[7]:

---

[6]     28 C.F.R. § 51.22 is entitled "premature submissions." It provides as follows:
        The Attorney General will not consider on the merits:
        (a) Any proposal for a change affecting voting submitted prior to final enactment or administrative decision or
        (b) Any proposed change which has a direct bearing on another change affecting voting which has not received section 5 preclearance.
        However, with respect to a change for which approval by referendum, a State or Federal court or a Federal agency is required, the Attorney General may make a determination concerning the change prior to such approval if the change is not subject to alteration in the final approving action and if all other action necessary for approval has been taken.
28 C.F.R. § 51.22.

[7]     Again, given that an objection to the enforcement of Riley v. Kennedy was actually interposed, it is important to demonstrate that the Alabama Supreme Court was relying on generally-applicable, race-neutral principles, and that is best done by reproducing the Court's reasoning.

Governor Riley contends that Act No. 2004-455, Ala. Acts 2004, amending § 11-3-6, Ala. Code 1975, did not revive Act No. 85-237, Ala. Acts 1985, which this Court had held unconstitutional, see Stokes v. Noonan, and that, therefore, the trial court erred in declaring that the vacancy on the Mobile County Commission created by Jones's resignation should be filled by a special election.[FN2]

> [FN2.] We review this issue only as presented by these facts and by the parties' arguments regarding these facts; we do not address any other possible impediments that may exist to the constitutionality or enforceability of Act No. 85-237.

In Stokes, this Court addressed the constitutionality of Act No. 85-237, which provided that vacancies on the Mobile County Commission would be filled by a special election when at least 12 months remained on the unexpired term of any commissioner. The registered voter challenging Act No. 85-237 in Stokes argued that Act No. 85-237, a local act, was subsumed by a general law, § 11-3-6, Ala. Code 1975, and, consequently, was unconstitutional under Art. IV, § 105, Alabama Constitution 1901.

Act No. 85-237 provided:

> " 'Whenever a vacancy occurs in any seat on the Mobile County Commission with twelve months or more remaining on the term of the vacant seat, the judge of probate shall immediately make provisions for a special election to fill such vacancy with such election to be held no sooner than sixty days and no later than ninety days after such seat has become vacant. Such election shall be held in the manner prescribed by law and the person elected to fill such vacancy shall serve for the remainder of the unexpired term.' "

534 So.2d at 238. We held that Act No. 85-237, applicable only to Mobile County, constituted a local law on the same subject as the previously enacted general law. We then considered § 11-3-6, Ala. Code 1975, which appears in Chapter 3, Title 11, of the Alabama Code pertaining to county commissions. It provided at the time we decided Stokes: " 'In case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed.' " 534 So.2d at 238. We recognized that § 11-3-6 is clearly a general law, a statewide statute addressing the filling of vacancies on county commissions throughout the State, and that the legislature did not in the language of § 11-3-6, Ala.

Request for Reconsideration
January 30, 2007
Page 12

Code 1975, manifest an intent to except the local law from the general law. Therefore, we held that Act No. 85-237 was contrary to § 11-3-6, Ala. Code 1975, and, consequently, that it violated Art. IV, § 105, Alabama Constitution 1901, which provides, in pertinent part: "No special, private, or local law . . . shall be enacted in any case which is provided for by a general law." We reasoned that because the legislature did not in § 11-3-6, Ala. Code 1975, manifest an intent to except the local law from the general law, the contrary local law, in that case Act No. 85-237, must defer to the general law, § 11-3-6, Ala. Code 1975, and, consequently, we held, Act No. 85-237 violated Art. IV, § 105, Alabama Constitution 1901.

On May 14, 2004, Governor Riley approved Act No. 2004-455 and it became effective. Act No. 2004-455 amends § 11-3-6, Ala. Code 1975, to read as follows: "Unless a local law authorizes a special election, in case of a vacancy, it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he or she is appointed."

Kennedy argues that Act No. 2004-455, which amended § 11-3-6, Ala. Code 1975, manifests an intent by the legislature to cure the impediment to the enforceability this Court found as to Act No. 85-237 and to now give effect to that Act and that, consequently, a special election is the proper procedure by which to fill the vacancy created on the Mobile County Commission by Jones's resignation. We cannot agree with that conclusion because the language of Act No. 2004-455 does not clearly so indicate.

This Court has consistently held that

" 'statutes are to be prospective only, unless clearly indicated by the legislature. Retrospective legislation is not favored by the courts, and statutes will not be construed as retrospective unless the language used in the enactment of the statute is so clear that there is no other possible construction. Sutherland Stat. Const., § 41.04 (4th ed 1984).'

"Dennis v. Pendley, 518 So.2d 688, 690 (Ala.1987)."

Gotcher v. Teague, 583 So.2d 267, 268 (Ala.1991). Moreover, although curative statutes are "of necessity" retroactive, Horton v. Carter, 253 Ala. 325, 328, 45 So.2d 10, 12 (1950), even they are subject to the same rule of statutory construction, i.e., they will not be construed as retroactive unless the intent of the legislature that the statute have such retroactive effect is

Request for Reconsideration
January 30, 2007
Page 13

clearly expressed. The act under consideration in <u>Horton</u> expressly provided: "This Act shall be deemed retroactive in its effect upon its passage and approval by the Governor or upon its otherwise becoming a law." 253 Ala. at 328, 45 So. 2d at 12. On numerous other occasions the legislature has demonstrated its ability to provide expressly for retroactive effect when enacting curative legislation. See, <u>e.g.</u>, § 34-8-28(h), Ala. Code 1975 ("The provisions of this amendatory section are remedial and curative and shall be retroactive to January 1, 1998."); § 11-50-16(c), Ala. Code 1975 ("The provisions of this section shall be curative and retroactive . . . ."); § 11-43-80(d), Ala. Code 1975 ("The provisions of this section shall be curative and retroactive . . . ."); and Act No. 2001-891, § 5, Ala. Acts 2001 ("It is the intent of the Legislature that this act be construed as retroactive and curative.").

   Here, the plain language in Act No. 2004-455, amending § 11-3-6, Ala. Code 1975, provides for prospective application only, and that language must be given effect according to its terms. Nothing in the language in Act No. 2004-455 demonstrates an intent by the legislature that the amendment of § 11-3-6 apply retroactively. The argument that Act No. 2004-455 applies prospectively only is further supported by the preamble of the Act, which provides that the purpose of the Act is "[t]o amend Section 11-3-6 of the Code of Alabama 1975, relating to county commissions, <u>to authorize the Legislature by local law to provide for the manner of filling vacancies in the office of the county commission</u>." (Emphasis added [by the <u>Riley v. Kennedy</u> Court].) The language "to authorize the Legislature . . . to provide" the means by which vacancies on the county commission are to be filled further indicates an intention by the legislature that the Act is to be prospectively applied. Therefore, we hold that Act No. 2004-455 applies prospectively only; consequently, Governor Riley is authorized to fill the vacancy on the Mobile County Commission by appointment.

<u>Riley v. Kennedy</u>, 928 So.2d 1013, 1015-17 (Ala. 2005).

   Thus, relying on generally-applicable, race-neutral principles, the Alabama Supreme Court held that Act No. 85-237, which had been held unconstitutional in <u>Stokes v. Noonan</u>, was not revived by Act No. 2004-455, which operated prospectively only. With that ruling, there was no State law basis for the proposed (and precleared) special election.

### Appointing Juan Chastang

   Governor Riley proceeded to appoint Juan Chastang to fill the vacancy in the Mobile County Commission. Mr. Chastang currently serves as the Commissioner for District 1 and as President of the County Commission. Mr. Chastang is African-American.

Request for Reconsideration
January 30, 2007
Page 14

**Scope of <u>Riley v. Kennedy</u>**

Again, Mobile County was not the only county with a local law purporting to authorize a special election to fill a vacancy on a county commission that pre-dated the enactment of Act No. 2004-455. The State is aware of similar local acts in Jefferson County, Randolph County, Houston County, Macon County (*sui generis*) and Etowah County. While only the Mobile County local law, Act No. 85-237, was at issue in the decision of <u>Riley v. Kennedy</u>, the State believes that <u>Riley v. Kennedy</u> casts doubt on any argument that the other local laws had been revived or saved by Act No. 2004-455.[8] While Mobile County's local law is distinguishable from the others in that it had actually been declared unconstitutional, and, hence, it was void *ab initio*, *Ex parte Southern Ry. Co.*, 556 So.2d 1082, 1089-90 (Ala. 1989) (citing cases), the <u>Riley v. Kennedy</u> decision focused entirely on retroactivity. Accordingly, this distinction is not likely to be persuasive to a court in the event that one of the other local laws is challenged.

**Summarizing the History of Appointments to Fill Vacancies on the Mobile County Commission**

To reiterate, Juan Chastang, like Samuel L. Jones before him, was appointed to fill a vacancy on the Mobile County Commission. Since the inception of the Mobile County Commission, there has been only one special election conducted to fill a vacancy on that Commission, and that election was conducted under the cloud of litigation that ultimately resulted in the law purporting to authorize the election (Act No. 85-237) being held unconstitutional. See <u>Stokes v. Noonan</u>. Then-Governor Guy Hunt responded to the Alabama Supreme Court's decision in <u>Stokes v. Noonan</u> by appointing the winner of the special election, Samuel L. Jones, to the seat. Hence, in the 45-year history of the Mobile County Commission, there were only approximately three years during which it was thought, albeit incorrectly, that a special election might be authorized to fill a vacancy on that Commission.[9] The rest of the time, the generally applicable law of gubernatorial appointment applied. When a vacancy arose in 2005, it was filled by appointment.

---

[8]    An Attorney General's opinion that concerns the operation of Act No. 2004-455 as applied to Houston County is clearly marked: "DO NOT CITE – See Riley v. Kennedy, Ala. Sup. Ct., Case No. 1050087 (Nov. 9, 2005)." Opinion to Honorable Steve Clouse, Att'y Gen'l Opn. 2004-215 (Sept. 7, 2004).

[9]    As set out above, the Mobile County Commission came into being in January 1961. At that time, both generally applicable law (now codified at Ala. Code § 11-3-6) and the Act creating the Commission (Act No. 181, 1957 Regular Session of the Alabama Legislature) called for gubernatorial appointment in the event of a vacancy. More than twenty years passed before Act No. 85-237 was enacted and purported to change the method of filling a vacancy on the Mobile County Commission from gubernatorial appointment to special election. The Act was approved April 8, 1985 and the State was informed that the Attorney General had no objection on June 17, 1985. Two years later, in April 1987, Willie H. Stokes filed suit challenging the constitutionality of Act No. 85-

In fact, viewed from this perspective, Riley v. Kennedy did not cause a change at all, at least not in Mobile County. Stokes v. Noonan had held that Act No. 85-237 was unconstitutional, and, hence, that any vacancy on the Mobile County Commission had to be filled by gubernatorial appointment. Under Alabama law, an Act that is declared unconstitutional is void ab initio. Ex parte Southern Ry. Co., 556 So.2d 1082, 1089-90 (Ala. 1989) (citing cases). Riley v. Kennedy held that nothing had changed; Act No. 85-237 still could not be enforced. Outside of Mobile County, Riley v. Kennedy did have more of an impact, in that it cast doubt on any argument that the other local laws had been revived or saved by Act No. 2004-455. Cf. Opinion to Honorable Steve Clouse, Att'y Gen'l Opn. 2004-215 (Sept. 7, 2004).

### Kennedy v. Riley: Federal Court Litigation

The Alabama Supreme Court handed down its decision in Riley v. Kennedy on November 9, 2005. By letter dated the next day, my Office wrote to inform USDOJ of the Alabama Supreme Court's decision. Thereafter, on November 16, 2005, the Riley v. Kennedy plaintiffs filed suit in federal district court.

The new complaint asserted that the Riley v. Kennedy decision wrought a change in existing law. The prayer for relief asked that the court declare that the Governor lacked the authority to appoint Mr. Jones' successor absent preclearance. The complaint made no mention of Stokes v. Noonan, but did seek to prevent a gubernatorial appointment, or to undermine any appointment that had already occurred. Subsequent briefing found the plaintiffs arguing that both Stokes v. Noonan and Riley v. Kennedy required preclearance to be enforceable.

My Office vigorously defended the lawsuit on behalf of Governor Riley, the only named defendant. In our Answer, we asserted that "Governor Riley's power of appointment stems from a [S]tate law that was in effect before November 1, 1964, and that, as subsequently modified and precleared, preserves that power '[u]nless a local law authorizes a special election . . . .' No valid [S]tate law authorizes a special election to fill a vacancy on the Mobile County Commission." Answer, 2 (emphasis added).[10] We further asserted that "[t]he United States cannot tell a State what [S]tate law is without running afoul of the Tenth Amendment to the United States Constitution." Id. at 3. We clearly took the position that '[t]he Alabama Supreme Court's decision in Riley v. Kennedy does not effect a change in standard, practice, or procedure with respect to voting." Id.

---

237 on dual grounds. The Alabama Supreme Court issued its decision holding Act No. 85-237 unconstitutional on September 30, 1988, barely three years after it was approved. Application of Act No. 85-237 had been attempted only once.

[10]    The reference is to Ala. Code § 11-3-6, as modified by Act No. 2004-455.

Request for Reconsideration
January 30, 2007
Page 16

Trial briefs were filed by both parties. In our briefing, we contended that requiring preclearance of decisions made in the course of the ordinary appellate process that invalidated precleared changes were not changes in voting. Instead, any State statute within the scope of Section 5 must be both valid as a matter of State law and precleared if it is to be enforceable. Preclearance <u>does not</u> speak to validity under State law. Moreover, preclearance <u>cannot</u> speak to validity under State law without raising grave constitutional questions. Certainly, preclearance cannot override a State's Constitution to act as a savings clause that requires a law that conflicts with a State's Constitution to, nonetheless, be enforced. In our initial brief, we put it this way:

> Preclearance of a state statute cannot validate an otherwise invalid state law without running afoul of the Tenth Amendment to the United States Constitution. Preclearance is an action by federal authorities that makes a valid state statute enforceable. Without a valid state law, though, a preclearance letter, like the letters relating to Act No. 85-237 and the local election in this case, is null, void, and of no effect. If that were not the case, the Voting Section of the Civil Rights Division of the United States Department of Justice . . . would be making state law.

Trial Brief of Governor Riley, 4-5.

In supplemental briefing, we predicted the exact problem now facing the State. We contended as follows:

> [T]he relief the Kennedy Plaintiffs seek is fraught with constitutional problems. Requiring the State to submit <u>Stokes v. Noonan</u>, or <u>Riley v. Kennedy</u>, for preclearance begs the question what would happen if USDOJ, with or without input from the Kennedy Plaintiffs or their supporters, objected. The State might then be compelled to conduct a special election under a state law that is unconstitutional and cannot be revived retroactively[, namely Act No. 85-237]. In that case, USDOJ would be making state law, and commandeering state officials in violation of the Tenth Amendment. Put differently, Section 5 would be unconstitutional as applied to the facts of this case.

Supplemental Brief of Governor Riley, 5.

Unfortunately, the three-judge court agreed with the plaintiffs and held that the <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> decisions could not be enforced unless they were precleared. <u>Kennedy v. Riley</u>, 445 F.Supp.2d 1333 (M.D. Ala. 2006). The heart of the court's reasoning was as follows:

> In reviewing the plaintiffs' § 5 claim, we are tasked with the limited purpose of determining "(i) whether a change was covered by § 5, (ii) if the change was covered, whether § 5's approval requirements were satisfied, and (iii) if the requirements were not satisfied, what remedy [is] appropriate." <u>City of Lockhart v. United States</u>, 460 U.S. 125, 129 n. 3, 103 S. Ct. 998, 74 L.Ed.2d 863 (1983). Because it is undisputed that <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> were not precleared, the critical

inquiries for this court are whether these decisions brought about a change covered by § 5, and, if so, the appropriate remedy.

In determining whether a change covered by § 5 occurred, we must first determine if there was, in fact, a change. Changes are measured by comparing the new challenged practice with the baseline practice, that is, the most recent practice that is both precleared and in force or effect. Abrams v. Johnson, 521 U.S. 74, 96-97, 117 S. Ct. 1925, 138 L.Ed.2d 285 (1997) (citing 28 CFR § 51.54); Gresham v. Harris, 695 F. Supp. 1179, 1183 (N.D.Ga.1988) (three-judge court), aff'd sub nom. Poole v. Gresham, 495 U.S. 954, 110 S. Ct. 2556, 109 L.Ed.2d 739 (1990).

Here, the parties dispute what constitutes the baseline practice. The plaintiffs argue that the baseline is Act No. 85-237, which provided for the filling of the vacancy on the Mobile County Commission by special election; they maintain that Stokes v. Noonan and Riley v. Kennedy were changes because the former invalidated the Act and the latter still refused to enforce it. The State responds that the baseline could not be Act No. 85-237 because the Alabama Supreme Court declared it unconstitutional; the State posits that Stokes v. Noonan and Riley v. Kennedy did not reflect a change but were rather a mere reaffirmation of the correct scope of the governor's preexisting appointment power under Alabama general law.

We think the plaintiffs have the better argument. Because Act No. 85-237 was the most recent precleared practice put into force and effect with the election of Jones in 1987, it is the baseline against which we must determine if there was a change. To be sure, the Alabama Supreme Court declared Act No. 85-237 unconstitutional under state law; this was, however, after Act No. 85-237 had been put into effect. We are required to determine the baseline "without regard for [its] legality under state law." Lockhart, 460 U.S. at 133, 103 S. Ct. 998 (relying on Perkins v. Matthews, 400 U.S. 379, 394-395, 91 S. Ct. 431, 27 L.Ed.2d 476 (1971)).

We therefore hold that, because Act No. 85-237 is the baseline and because Stokes v. Noonan invalidated Act No. 85-237 and Riley v. Kennedy held that Act No. 85-237 was not rendered enforceable by Act No. 2004-455, the two decisions constituted changes that should have been precleared before they were implemented. In reaching this holding, we emphasize that we are in no way disputing the rulings of the Supreme Court of Alabama, the reasoning underlying the rulings in these two cases, or that the governors acted in accordance with state law in making the appointments. Indeed, this court does not have jurisdiction to address such purely state-law questions. Whether Act No. 85-237 is, in fact, unconstitutional under state law and whether positions on the Mobile County Commission must be filled by special election or gubernatorial

Request for Reconsideration
January 30, 2007
Page 18

> appointment are state-law questions we do not reach and should not be
> understood in any way as reaching; our holding today does not in any way
> undermine these two decisions under state law. We merely hold that
> federal law requires that they be precleared before they are implemented.

Kennedy v. Riley, 445 F.Supp.2d 1333, 1336-37 (M.D. Ala. 2006) (alterations by the court).

The court allowed the State time to seek preclearance before taking up the issue of remedy. Originally the State was allowed 90 days to obtain preclearance, Judgment, dated August 18, 2006, but that time was extended upon an unopposed motion for more time, Order, dated November 16, 2006. Upon USDOJ's decision to interpose an objection, the State was granted additional time to seek reconsideration, Order, dated January 11, 2007; Order, dated January 29, 2007 (denying plaintiffs' request for reconsideration of the January 11, 2007 order).

## Act No. 2006-342

While the federal litigation was on-going in Kennedy v. Riley, the Alabama Legislature passed, and the Governor signed, Act No. 2006-342. That Act was the legislative response to the Alabama Supreme Court's decision in Riley v. Kennedy: if Act No. 2004-455 (authorizing local laws) could not revive Act No. 85-237 (Mobile County's old local law, which had been found unconstitutional in Stokes v. Noonan), then a new local law was needed. Act No. 2006-342 was that new local law. In pertinent part, it provided:

> Whenever a vacancy occurs in any seat on the Mobile County
> Commission with 12 months or more remaining on the term of the vacant
> seat, the judge of probate shall immediately make provisions for a special
> election to fill such vacancy with such election no sooner than 60 days and
> no later than 90 days after such seat has become vacant. Such election
> shall be held in the manner prescribed by law and the person elected to fill
> such vacancy shall serve for the remainder of the unexpired term.

Act No. 2006-342.

To the State's knowledge, no declaratory judgment action has been filed to test the constitutionality of Act No. 2006-342, and no entity has submitted the Act for preclearance.

The State believes that the proper treatment of Act No. 2006-342 holds the key to the resolution of this issue. If Act No. 2006-342 is submitted for preclearance and precleared, it will govern future vacancies on the Mobile County Commission. The appointment of Juan Chastang, like the special election/ appointment of Samuel L. Jones, will be a one-time event. Moreover, the decisions of the Supreme Court of Alabama will be given due respect, the authority of State officials will not be commandeered, and State officials will not be directed to conduct a special election for which there is no State law authority. Cf. Printz v. United States, 521 U.S. 898, 117 S. Ct. 2365 (1997).

Request for Reconsideration
January 30, 2007
Page 19

**The Preclearance Submission and Objection**

As a direct result of the three-judge federal court's decision in Kennedy v. Riley and without waiving its objections, the State submitted the Alabama Supreme Court decisions in Stokes v. Noonan and Riley v. Kennedy for preclearance.[11] The submission was made on November 9, 2006.

While the submission asked for preclearance of the two decisions by the Alabama Supreme Court, it also spoke in terms of filling vacancies on the Mobile County Commission and specifically described the scope of the change as limited solely to that particular Commission. Submission letter, 1-4, 6 (November 9, 2006).

The State's submission also explained the "difficult position" that the federal court's decision put it in: "The State agrees that, when statutes make changes that affect voting, they must be precleared. Nothing, however, immunizes those statutes from challenge under [S]tate law, and the preclearance of a statute cannot pretermit the State's litigation process. This is particularly the case where race-neutral, generally-applicable principles of law are applied." Submission letter, 7 (November 9, 2006).

By letter dated November 28, 2006, counsel for the plaintiffs in the Kennedy v. Riley and Riley v. Kennedy litigation, acting on their behalf, commented on the State's submission. A copy of that comment was provided to the State.

By letter dated January 8, 2007, Assistant Attorney General Wan J. Kim, exercising the authority delegated to him, see 28 C.F.R. § 51.3, interposed an objection to the State of Alabama's enforcement of the Alabama Supreme Court's decisions in Stokes v. Noonan and Riley v. Kennedy.

The objection letter indicated that additional comments may have been submitted without copy to the State. By letter dated January 9, 2007, the State has requested that USDOJ provide it with copies of any additional records concerning this submission. Those records were provided to the State by letters dated January 17, 2007 and January 25, 2007. The records include several documents entitled Memorandum of Telephonic Communication, which have been blacked-out to some extent to protect personal privacy. The vast majority of phone calls focus on the Juan Chastang appointment. Additionally, one of the plaintiffs in the Kennedy v. Riley and Riley v. Kennedy litigation faxed Act No. 2006-342 to USDOJ.

---

[11]    To note the obvious, the Attorney General reviews submissions and interposes an objection to those changes which come within the purview of Section 5 and which are thought to be retrogressive. Were USDOJ to agree with Alabama that the changes submitted are not properly subject to Section 5 review, it would be appropriate for the Attorney General to refrain from interposing an objection.

Request for Reconsideration
January 30, 2007
Page 20

## THE OBJECTION SHOULD BE WITHDRAWN

It is the State's position that the objection should be withdrawn, and that Alabama should be permitted to enforce the decisions in <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u>. The State believes that USDOJ has erroneously narrowed the scope of the change submitted for consideration and that this error has contributed to a flawed view of the relevant facts. Moreover, further analysis prompted by the comments of other interested parties and the USDOJ objection letter has caused the State to believe that restating the scope of the change would eliminate confusion and make it clear that the objection should not have been interposed and is due to be withdrawn.

More concretely, the State submitted for review a change to the method of filling vacancies on the Mobile County Commission. Submission letter, 1-4, 6 (November 9, 2006). In contrast, USDOJ reviewed, and objected to, the filling of the District 1 seat vacated in September 2005 by Samuel L. Jones. Properly construed, the change at issue, and the change due to be further considered, concerns the method of filling vacancies on county commissions that have local laws which pre-date Act No. 2004-455 and authorize special elections to fill said vacancies.

### The Norm

It is important to understand that, in Alabama, appointment is the norm for filling vacancies on county commissions. The use of a special election to fill these vacancies is a deviation from the norm. Of Alabama's 67 counties, only six, one of them *sui generis*, have local laws authorizing the filling of vacancies on their county commissions by special election. Appointments date back to the 1852 Code of Alabama, while special election laws, like Act No. 85-237, are of a more recent vintage and have been found to violate the State Constitution.[12] <u>Stokes v. Noonan</u>. This is the perspective from which Alabama's submission should be viewed.

In contrast, the objection letter is apparently premised upon the idea that special elections are the norm and that Alabama is attempting this one time to use an appointment to deny the people their right to vote. The objection letter conveys this idea by focusing on Act No. 85-237 and on Act No. 2006-342, essentially sandwiching the Juan Chastang appointment between these two Acts and insisting that the Acts are enforceable and that Act No. 85-237 has been enforced. <u>See</u> Objection letter, 1-2.  A key portion of the letter states:

> Pursuant to Act No. 85-237, a vacancy on the Mobile County Commission is to be filled through popular election by the voters within the relevant single-member district.  That statute was precleared by the

---

[12]    Gubernatorial appointments date back to about 1868. Prior to that, vacancies on the Court of County Commissioners were filled by that Court. Code 1852, § 698; Code 1867, § 826.

Attorney General under Section 5 on June 17, 1985 (File No. 1985-1645), and was first implemented in a 1987 District 1 special election. Pursuant to a decision of the Alabama Supreme Court in <u>Stokes v. Noonan</u>, that method of filling vacancies was changed from election by the voters of the district to appointment by the Governor of Alabama in 1988, and reaffirmed by <u>Riley v. Kennedy</u> in 2005.

Pursuant to the decision of the three-judge federal panel in <u>Kennedy v. Riley</u>, the State has submitted the changes effected by <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> for review under Section 5 of the Voting Rights Act. Additionally, we understand that Alabama law has changed, legislatively reversing the decision in these cases and restoring the authority to fill vacancies to the voters themselves in future elections. This is the effect of Act No. 2006-342, which was signed by the Governor on April 12, 2006, and which would govern all future vacancies. The question before us, therefore, is limited to whether the change effected by <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> will lead to impermissible retrogression, caused by the appointment, rather then election, of an individual to fill a vacancy on the Mobile County Commission for a term expiring in 2008.

. . .

Thus, the last precleared procedure for filling vacancies in the Mobile County Commission that was in force or effect was the special election method set forth in Act No. 85-237. <u>Kennedy</u>, 445 F. Supp. 2d at 1336. This Act remains in full force and effect, as it affects voting, was precleared, and was implemented in the 1987 special election cycle. <u>See</u> <u>Young v. Fordice</u>, 520 U.S. 273, 282-83 (1997); <u>Lockhart</u>, 460 U.S. at 132-33. It is therefore the benchmark against which we measure the proposed change to fill vacancies by appointment of the Governor of Alabama.

Objection letter, 1-2. [13]

---

[13]    USDOJ's reliance on <u>Young v Fordice</u> is misplaced. There, the Supreme Court held that a plan that was in effect for only a short time and was abandoned for State law reasons, though it was precleared, had not properly moved the baseline because it was never "in force or effect." 520 U.S. 282-83. In the same way here, Act 85-237 was in effect for only a short time, and the first attempt to use it provoked a legal challenge. While a special election was held, that election was the result of the vagaries of the litigation process; if the Circuit Court had enjoined the election as Plaintiff Stokes wanted, and as the Alabama Supreme Court's decision held it should have, there would have been no election to which to point. In any event, Act 85-237 was abandoned as soon as its unlawfulness became apparent and then-Governor Hunt exercised his power of appointment. Just as in <u>Fordice</u>, Act 85-237 was never truly "in force or effect."

Request for Reconsideration
January 30, 2007
Page 22

The letter fails to acknowledge that gubernatorial appointment was the long-standing norm, prior to the enactment and preclearance of Act No. 85-237. Code 1876, § 740; Code 1886, § 820; Code 1896, § 952; Code 1907, § 3307; Code 1923, § 6749; Code 1940, T. 12, § 6. Before gubernatorial appointments, vacancies on the Court of County Commissioners were filled by that Court. Code 1852, § 698; Code 1867, § 826. Special elections were not the norm.

The letter fails to acknowledge that the Alabama Supreme Court's decisions in Stokes v. Noonan and Riley v. Kennedy were grounded in well-established legal principles. The decisions were neither racially motivated nor based on specious rationales advanced to reach a particular result. The Alabama Supreme Court did not simply decide that it preferred appointments. Rather, it held, based on generally-applicable, race-neutral principles, that Act No. 85-237 was unconstitutional and could not be revived by a later-dated prospective Act.[14]

The letter also fails to acknowledge that the unconstitutionality of Act No. 85-237 impacts its enforceability. The letter further fails to acknowledge that, after the Supreme Court's decision in Stokes v. Noonan was handed down, then-Governor Guy Hunt appointed Samuel L. Jones to the seat he had won during the invalid special election in order to protect Mr. Jones from an action to oust him. Additionally, the letter fails to consider how these actions undermine the assertion that Act No. 85-237 "was first implemented in a 1987 District 1 special election." See Objection letter, 2. And, finally, the letter fails to acknowledge that Samuel L. Jones and Juan Chastang are African-American.

_____

[14]   In this way too, the current situation is different from Lockhart, upon which USDOJ relied. In Lockhart, the United States Supreme Court dealt with a situation where a city had not followed State law for approximately 50 years and then sought to invoke non-followed State law in preclearance. City of Lockhart v. United States, 460 U.S. 125, 132-33, 103 S. Ct. 998, 1003 (1982). The Court noted "[w]e doubt that Congress intended to force either [the Attorney General of the United States of the District Court for the District of Columbia] into speculation as to state law." Id. at 133, n.8. Here, the Alabama Supreme Court has clearly explained what State law requires, and it requires gubernatorial appointment.

The Lockhart Court relied on Perkins v. Matthews, 400 U.S. 379, 91 S. Ct. 431 (1971), for its conclusion that the local practice being enforced mattered more than the contradictory State law. Lockhart, 460 U.S. at 132-33. Perkins involved Canton's inexplicable and unexplained failure to follow Mississippi law on Mississippi's "applicable date." Perkins, 400 U.S. at 395. It is, therefore, distinguishable.

Request for Reconsideration
January 30, 2007
Page 23

**Improper Reliance on Act No. 2006-342**

While the letter fails to acknowledge and consider all these things, an equally great error is found in the fact that the letter improperly acknowledges, and firmly relies upon, Act No. 2006-342. That Act has not yet been submitted for preclearance. In fact, I find no mention of its existence in the State's submission.[15] There is a good reason for that. The three-judge court told the State, over its objection, to submit the decisions in Stokes v. Noonan and Riley v. Kennedy. That is what the State did. Moreover, accepting for the sake of argument the three-judge court's determination that these decisions represented a change and required preclearance, Act No. 2006-342 is the next change and needs its own submission. There was no need to submit Act No. 2006-342, and it was not appropriate for USDOJ to consider it, until the decisions in Stokes v. Noonan and Riley v. Kennedy had been considered and precleared.

Further, the State has cause to hesitate before making the submission of Act No. 2006-342. If the federal court decision in Kennedy v. Riley stands, then my Office will have an obligation to assure itself of the constitutionality of a change before submitting that change for preclearance. Otherwise, preclearance of an Act would substitute USDOJ for the State's litigation process and the State's Constitution as the gauge for measuring the validity of that Act under State law. As absurd as such a result appears—that the State may be told to apply an invalid State law because it was precleared—Alabama now finds itself in precisely that position.[16] I would note that this is an uncomfortable role for my Office to have to assume; we are accustomed to defending State statutes, not attacking them to test whether they violate the State Constitution. Moreover, given the case or controversy requirement, there may be no mechanism for this Office to test the constitutionality of statutes before seeking preclearance.

All of which is to say, that I believe USDOJ has erred in assuming that Act No. 2006-342 is valid and enforceable and will "govern all future vacancies." Objection letter, 2. That error is compounded by the fact that the existence of this Act apparently led USDOJ to narrowly construe the change under consideration to the point of considering a single appointment. Stokes v. Noonan and Riley v. Kennedy are not applicable to a single district in a single county in a single year. These decisions cast a

---

[15]    Act No. 2006-342 apparently came to the attention of USDOJ as a result of comments made by other interested parties.

[16]    You will recall that there were two challenges to the constitutionality of Act No. 85-237. While the passage of Act No. 2004-455 eliminates one of the grounds asserted by Plaintiff Stokes, the other has not been so addressed, and additional constitutional concerns might exist. Based on footnote 2 in the Riley v. Kennedy decision, quoted above, it appears this fact has not escaped the attention of the Alabama Supreme Court either.

Request for Reconsideration
January 30, 2007
Page 24

pall on certain local laws existing in five other counties, and the Stokes v. Noonan decision has been the settled law of Alabama for nearly 20 years.

Moreover, this reality illuminates the possibility that a comment by the Kennedy v. Riley plaintiffs led USDOJ to focus on the wrong facts. The plaintiffs commented that "the voters of Mobile County Commission District 1 have different political preferences than Gov. Riley. In the recent gubernatorial election, the voters of District 1 cast only 40% of the [sic] votes for Gov. Riley, while the other two Districts voted 73% for Riley." Comment, 2 (November 28, 2006) (footnote omitted). These facts appear to have influenced USDOJ, as the objection letter stated: "there is no dispute that the change would transfer this electoral power to a state official elected by a statewide constituency whose racial make-up and electoral choices regularly differ from those of the voters of District 1." Objection letter, 3. These facts, however, are irrelevant. Because Stokes v. Noonan and Riley v. Kennedy are applicable to more than a single district in a single county in a single year, it is entirely irrelevant who currently holds the Office of Governor or how one particular district of the Mobile County Commission voted in the 2006 gubernatorial election.[17]

With all due respect, the existence of Act No. 2006-342 also appears to have confused the analysis. In addition to using the very existence of an un-submitted Act to unilaterally redefine the scope of the change submitted, USDOJ has taken the unusual step of suggesting that Act No. 2006-342 need not be submitted for preclearance, Objection letter, 3, while simultaneously announcing that "[b]ecause the changes pursuant to Stokes and Riley were never precleared, they cannot serve as a benchmark," Objection letter, 2. Alabama has not asked that Stokes v. Noonan and Riley v. Kennedy be the benchmark; it has asked that they be precleared. Once they are precleared, those Alabama Supreme Court decisions will serve as the benchmark for future submissions. Preclearance of these decisions will more clearly delineate the appropriate benchmark.

In the federal court litigation, the State did dispute what the benchmark should be, but that dispute was over whether Act No. 85-237 could serve as a benchmark when it was unconstitutional. There has never been a dispute over whether Stokes v. Noonan and Riley v. Kennedy can serve as benchmarks. Such a dispute could only arise if the State had acted to submit Act No. 2006-342 for preclearance before achieving either preclearance of those decisions or a decision from a three-judge federal court that preclearance of the Supreme Court decisions was not needed.

Again, the proper treatment of Act No. 2006-342 is the key. When that Act becomes enforceable, the Legislature's intent can be carried out in a way that does not

---

[17]    If the experiences of the Mobile County Commission alone matters, USDOJ is reminded that both times gubernatorial appointments have been used to fill vacancies on the Mobile County Commission, Republican governors appointed African-American individuals to the positions.

involve disrespect for the Supreme Court of Alabama. The decisions in <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> do not mean that the Legislature is powerless; they mean that the Legislature must exercise the powers it has consistently with the Constitution of Alabama and generally applicable law.

**The Proper Benchmark: <u>Young v. Fordice</u>**

With respect to the question of benchmark, the <u>Kennedy v. Riley</u> three judge court held that: "We are required to determine the baseline 'without regard for [its] legality under state law.' <u>Lockhart</u>, 460 U.S. at 133, 103 S.Ct. 998 (relying on <u>Perkins v. Matthews</u>, 400 U.S. 379, 394-395, 91 S. Ct. 431, 27 L.Ed.2d 476 (1971))." (alteration by the court). Likewise, USDOJ has relied on <u>Lockhart</u> and <u>Perkins</u>, as well as the Supreme Court's decision in <u>Young v. Fordice</u>, 520 U.S. 273, 117 S. Ct. 1228 (1997). Objection letter, 2. Alabama takes the position the Supreme Court's unanimous decision in <u>Young</u> supports the State's position, distinguishing this case from the situations in <u>Lockhart</u> and <u>Perkins</u>.

<u>Young</u> arose from changes made by Mississippi to its voter registration system. The Supreme Court spoke in terms of an "Old System," a "Provisional Plan" and a "New System." <u>Id.</u> at 276-277. Mississippi briefly transitioned from the Old System to the Provisional Plan in an attempt to comply with the National Voter Registration Act of 1993. <u>Id.</u> at 275-76. State officials began implementing the Provisional Plan under the assumption that State law would be altered to authorize it. <u>Id.</u> at 277-78. Moreover, State officials submitted the Provisional Plan for preclearance, which was granted. <u>Id.</u> at 277-79. Thereafter, the Mississippi Legislature failed to authorize the Provisional Plan, and State officials quickly abandoned it in favor of the New System. <u>Id.</u> at 278-279. That New System was not submitted for preclearance and litigation ensued. <u>Id.</u> at 280-81.

The United States Supreme Court concluded that the New System required preclearance, not because it was a change from the Provisional Plan but because it was a change from the Old System. <u>Id.</u> at 281-85. The Court's reasoning is instructive, and highly applicable to Alabama's situation.

The Plaintiffs and USDOJ "argue[d] that the Provisional Plan, because it was precleared by the Attorney General, became part of the baseline against which to judge whether a future change must be precleared." <u>Id.</u> at 282. The district court "rejected this argument on the ground that the Provisional Plan was a misapplication of state law, never ratified by the State." <u>Id.</u> at 281. The United States Supreme Court agreed: "We, too, believe that the Provisional Plan, in the statute's words, was never 'in force or effect.' 42 U.S.C. § 1973c." <u>Id.</u> at 282. The Court explained its agreement as follows:

> The District Court rested its conclusion upon the fact that Mississippi did not change its state law so as to make the Provisional Plan's "unitary" registration system lawful and that neither the Governor

Request for Reconsideration
January 30, 2007
Page 26

nor the legislature nor the state attorney general ratified the Provisional Plan. The appellants argue that the simple fact that a voting practice is unlawful under state law does not show, entirely by itself, that the practice was never "in force or effect." We agree. <u>A State, after all, might maintain in effect for many years a plan that technically, or in one respect or another, violated some provision of state law.</u> Cf. <u>Perkins v. Matthews,</u> 400 U.S. 379, 394-395, 91 S. Ct. 431, 440, 27 L.Ed.2d 476 (1971) (deeming ward system " <u>in fact</u> 'in force or effect' " and requiring change from wards to at-large elections to be precleared even though ward system was illegal and at-large elections were required under state law (emphasis in original)); <u>City of Lockhart v. United States,</u> 460 U.S. 125, 132-133, 103 S. Ct. 998, 1003-1004, 74 L.Ed.2d 863 (1983) (numbered-post election system was "in effect" although it may have been unauthorized by state law). <u>But that is not the situation here.</u>

    <u>In this case, those seeking to administer the Provisional Plan did not intend to administer an unlawful plan. They expected it to become lawful. They abandoned the Provisional Plan as soon as its unlawfulness became apparent, i.e., as soon as it became clear that the legislature would not pass the laws needed to make it lawful.</u> Moreover, all these events took place within the space of a few weeks. The plan was used to register voters for only 41 days, and only about a third of the State's voter registration officials had begun to use it. Further, the State held no elections prior to its abandonment of the Provisional Plan, nor were any elections imminent. <u>These circumstances taken together lead us to conclude that the Provisional Plan was not "in force or effect"; hence it did not become part of the baseline against which we are to judge whether future change occurred.</u>

<u>Young,</u> 520 U.S. at 282-83 (emphasis added, except where otherwise noted).

While one special election was conducted pursuant to Act 85-237 (resulting in the election of Mr. Samuel L. Jones), that election was conducted under the cloud of litigation that ultimately resulted in Act No. 85-237 being held unconstitutional. <u>Stokes v. Noonan.</u> Under Alabama law, an Act that is declared unconstitutional is void <i>ab initio.</i> <i>Ex parte Southern Ry. Co.,</i> 556 So.2d 1082, 1089-90 (Ala. 1989) (citing cases). Then-Governor Guy responded to the <u>Stokes v. Noonan</u> decision by appointing Mr. Jones to the Commission. Hence, Act No. 85-237 was only very briefly enforced. In this way, it is very different from the situations in <u>Lockhart</u> and <u>Perkins</u> where the covered jurisdictions had a long-standing practice in violation of State law.

While I recognize that Alabama's situation is distinguishable from <u>Young</u> in that an election was conducted, I do not read <u>Young</u> to make the conduct of one election, standing alone, dispositive, especially given that the special election was conducted while litigation challenging Act No. 85-237 was pending. Under <u>Young,</u> USDOJ should not consider whether <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> represent a retrogression from

Request for Reconsideration
January 30, 2007
Page 27

Act No. 85-237, but whether these decisions represent a retrogression from the practice which existed prior to the passage of that Act. Because these decisions return the State to the prior practice, the answer is "no", and USDOJ should not object.

### Scope of <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u>

Mobile County was not the only county with a local law purporting to authorize a special election to fill a vacancy on a county commission at the time that <u>Stokes v. Noonan</u> was decided. The State is aware of similar local acts in Jefferson County (Act No. 77-784), Randolph County (Act No. 80-291), Houston County (Act No. 86-174), Macon County (Act No. 87-527) and Etowah County (Act No. 88-790). The Macon County law applied only to the election of the Chairman of the County Commission in 1987, so it should be regarded as *sui generis*.

While only the Mobile County local law, Act No. 85-237, was at issue in the decision of <u>Stokes v. Noonan</u>, the State believes that <u>Stokes v. Noonan</u> casts a pall over the other local laws, rendering them vulnerable to the same kind of challenge. Likewise, the State believes that the <u>Riley v. Kennedy</u> decision casts doubt on any argument that those local laws are saved by Act No. 2004-455. [18] While Mobile County's local law is distinguishable from the others in that it had actually been declared unconstitutional, and hence it was void *ab initio, Ex parte Southern Ry. Co.*, 556 So.2d 1082, 1089-90 (Ala. 1989) (citing cases), the <u>Riley v. Kennedy</u> decision focused entirely on retroactivity. Accordingly, this distinction is not likely to be persuasive to a court in the event that one of the other local laws is challenged.

The objection letter gave some weight to census data for the area contained within District 1 of Mobile County. It is inappropriate to focus solely on the demographics of District 1 of Mobile County when, at a minimum, the changes encompassed by the submission impact all of Mobile County. Moreover, given the statewide applicability of the Supreme Court's decisions, to the extent that any population data is relevant, it is necessary to consider all of Mobile County and the five other counties known to have similarly vulnerable local laws, and to do it with some sense of the State information. Based on information currently available from the U.S. Census Bureau website, the data are as follows:

---

[18]     For proof of this, one need look no further than the Opinion to Honorable Steve Clouse, Att'y Gen'l Opn. 2004-215 (Sept. 7, 2004), which concerns the operation of Act No. 2004-455 as applied to Houston County and is clearly marked: "DO NOT CITE – See Riley v. Kennedy, Ala. Sup. Ct., Case No. 1050087 (Nov. 9, 2005)."

Request for Reconsideration
January 30, 2007
Page 28

| Jurisdiction | Population (2005 estimate) | White (2005) | Black (2005) | Other (derived) |
|---|---|---|---|---|
| State of Alabama | 4,557,808 | 71.4 % | 26.4 % | 2.2 % |
| Etowah County | 103, 189 | 83.8 % | 14.6 % | 1.6 % |
| Houston County | 94,249 | 72.2 % | 25.9 % | 1.9 % |
| Jefferson County | 657,229 | 56.8 % | 41.2 % | 2.0 % |
| Macon County | 22,810 | 15.7 % | 82.8 % | 1.5 % |
| Mobile County | 401,427 | 62.2 % | 34.5 % | 3.3 % |
| Randolph County | 22,717 | 76.8 % | 22.1 % | 1.1 % |

The November 28, 2006, comment by Plaintiffs' counsel made much of special elections that Plaintiffs contend were held in Houston County and in Etowah County. Comment, 4 (November 28, 2006). As to Houston County, the comment notes the existence of Opinion to the Honorable Steve Clouse, No. 2004-215 (September 7, 2004).[19] That opinion explained the holding of <u>Stokes v. Noonan</u> and that Act No. 2004-455 had been passed but was not yet precleared and, thus, was not yet enforceable. The opinion went on to state that, once the Act has been precleared, a vacancy occurring after the enactment date of Act No. 2004-455 should be filled by special election. While the comment relies on this final statement, it neglects to mention that the opinion has been marked: "DO NOT CITE – See Riley v. Kennedy, Ala. Sup. Ct., Case No. 1050087 (Nov. 9, 2005)." The fact that a special election might have been held in Houston County in reliance on that opinion pales in importance to the reality that any such special election was unauthorized under <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u>.

As to Etowah County, the comment hints that an unprecleared special election was held there, and notes that the district voting was majority white, as if that fact were at all relevant or explanatory. First, if the election was held and was not precleared, it was in violation of federal law in addition to being in violation of State law (<u>Stokes v. Noonan</u>). Second, the comment says that the Secretary of State's website revealed that the election was on April 26, 2005. If that is true, then, like any special election held in Houston County, the Etowah County special election predated the <u>Riley v. Kennedy</u> decision.

---

[19]    Attorney General opinions are not binding law, though the courts sometimes find the opinions persuasive. <u>Anderson v. Fayette County Bd. of Educ.</u>, 738 So.2d 854, 858 (Ala.1999) (citing cases).

Request for Reconsideration
January 30, 2007
Page 29

The fact that there was some confusion about the interplay between <u>Stokes v. Noonan</u> and Act No. 2004-455, which was clarified in <u>Riley v. Kennedy</u>, should come as no surprise. This is the common law system at work. It is one reason why it can be so very difficult for the State to precisely describe how a changed statute, regulation, or procedure will play out, and, in turn, why the strict requirement that jurisdictions covered by Section 5 do so can be unreasonable. For this reason, to the extent it must be judged, the State should be judged by the pronouncements of its Supreme Court as to what the law of the Alabama is (where they exist), and not by the actions of one or two or three counties. Such a position would be consistent with the <u>Lockhart</u> Court's reluctance to have USDOJ trying to "specul[ate] as to state law." <u>City of Lockhart v. United States</u>, 460 U.S. 125, 133 n.8, 103 S. Ct. 998, 1003 n.8 (1983).

**From An Election to an Appointment**

Another aspect of the objection letter causes me great concern and warrants further consideration. The objection letter evidences a general disapproval of changes from elections to appointments, seemingly in all situations. Such a position, if held by USDOJ, is a further affront to State sovereignty in that it constitutes a grave interference with the State's ability to manage its affairs and make progress for its citizenry. Such a position, if held by USDOJ, likely violates the Tenth Amendment and the principles set out in such decisions as <u>Coyle v. Smith</u>, 221 U.S. 559, 31 S. Ct. 688 (1911) and <u>Printz v. United States</u>, 521 U.S. 898, 117 S. Ct. 2365 (1997). <u>See Coyle</u>, 221 U.S. at 567, 31 S.Ct. at 690 ("'This Union' was and is a union of states, equal in power, dignity, and authority, each competent to exert that residuum of sovereignty not delegated to the United States by the Constitution itself."); <u>Printz</u>, 521 U.S. at 918-19 ("Although the States surrendered many of their powers to the new Federal Government, they retained 'a residuary and inviolable sovereignty,' The Federalist No. 39, at 245 (J. Madison).").

An example will serve to illustrate my point. Judges are elected in Alabama. While I have publicly supported the continued election of judges in Alabama, others, including the Alabama Bar Association, would like to see merit selection for appellate judges. The Association's website reports that Alabama is one of only seven States that continue to elect judges. Which system is better is a matter on which reasonable people can, and do, disagree. There are policy arguments to be made on both sides. For present purposes, the important point is that the policy discussion should stay in Alabama.

Should Alabama's voters adopt a constitutional amendment altering how judges are selected in this State, it would be egregious for USDOJ to trump that choice simply because the move is from election to appointment. This is especially true given that many other States do not elect their judges, according to the Alabama Bar Association, and given that the policy choice at the federal level calls for appointment. Interposing an objection in that situation would not be enforcing the constitutional rights of minority groups, it would be invading the constitutional rights of sovereign States.

To the extent that the objection was interposed in part because of an anti-appointment policy, the State believes the objection should be reconsidered. Such reconsideration must extend beyond the purposes of the Voting Rights Act to a recognition of the limits placed on that important legislation by the United States Constitution. Cf. Reno v. Bossier Parish School Board, 528 U.S. 320, 120 S. Ct. 866 (2000) ("Such a reading would also exacerbate the 'substantial' federalism costs that the preclearance procedure already exacts, perhaps to the extent of raising concerns about § 5's constitutionality.") (internal citation omitted); Presley v. Etowah County Comm'n, 502 U.S. 491, 500-01, 112 S. Ct. 820, 827 (1992) (recognizing that Section 5 is "an extraordinary departure from the traditional course of relations between the States and the Federal Government," though it was constitutionally permissible at the time is was passed as a result of circumstances then prevailing); New York v. United States, 505 U.S. 144, 187-88, 112 S. Ct. 2409, 2434 (1992) ("[T]he Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day.").

There is a second point to be made on the issue of moving from election to appointment. We deal here with the limited use of appointment. While substantial space has been devoted to the fact that Stokes v. Noonan and Riley v. Kennedy apply beyond the vacancy in District 1 of the Mobile County Commission in the Fall of 2005, it is equally important keep in mind that these decisions operate only in the case of vacancy. In the normal course of business, county commissioners are elected.

For instance, Samuel L. Jones was appointed to his seat after the invalid special election held in Mobile County in 1987. He was re-elected to subsequent terms that kept him in office until 2005, when he resigned to become the elected Mayor of the City of Mobile. Mr. Jones' departure from office during an elected term created the vacancy to which Juan Chastang was appointed. Mr. Chastang will need to run for election in 2008 to continue to serve as the Commissioner for District 1.

Thus, the decisions in Stokes v. Noonan and Riley v. Kennedy are readily distinguishable from an Act that would permanently change the method of selection of a government official from election to appointment. It is not clear that USDOJ gave due consideration to this distinction. See Objection letter, 3 ("Attorneys General have on at least ten occasions previously interposed objections to changes in the method of selection from election to appointment in Alabama and elsewhere.").

**The Reasons for the Change**

In any event, even were it appropriate for USDOJ to adopt a blanket policy of interposing objections to all changes from elections to appointments, the submission before you would still warrant an exception to that policy. As I have set out above, the reason for the change from special election to appointment in the case of certain vacancies arising on county commissions (*i.e.,* those where there is a local law

Request for Reconsideration
January 30, 2007
Page 31

authorizing the special election that pre-dates Act No. 2004-455), is that decisions of the State's highest court demand it. Stokes v. Noonan; Riley v. Kennedy. And, again, those decisions were based on generally-applicable, race-neutral principles.

The change was not the result of a policy decision to favor appointments or to favor appointments in certain areas of the State. An objection that would command a State to ignore the decisions of its Supreme Court and to act in a manner in violation of its governing charter should only, if ever, be interposed in the most unusual and compelling of circumstances. These are not those circumstances.

The objection letter fails to convey that USDOJ gave any consideration to the fact that Stokes v. Noonan and Riley v. Kennedy are legal decisions of this State's highest court, not policy choices. The statement that "[i]n the meantime, special elections may be held pursuant to Act No. 85-237", Objection letter, 3, and the cold assessment that Act No. 85-237 is binding, irregardless of its unconstitutionality and solely because it was precleared, id. at 2, represent a disregard for the sovereignty of the State and for the Tenth Amendment to the United States Constitution. The State ought not be put in this situation, and USDOJ has an obligation to not lightly cause this situation.

**The State's Burden**

Alabama understands that it has the burden of demonstrating that any submitted change is not retrogressive, but that burden can only be so heavy and so ill-defined and be constitutional. Here, the objection letter states that the objection is interposed because USDOJ "ha[s] received no indication that the voters of District 1 would have selected the particular individual selected by the Governor." Objection letter, 3. That is, USDOJ is objecting because Alabama has not demonstrated that in the Fall of 2005 the voters of District 1 of Mobile County would have voted for Juan Chastang had a special election been held. It is not clear how the State could prove such a thing, were it even relevant in light of the change actually submitted for preclearance.[20]

The objection letter relies on 28 C.F.R. § 51.54(a), which provides as follows: "A change affecting voting is considered to have a discriminatory effect under section 5 if it will lead to a retrogression in the position of members of a racial or language minority group (i.e., will make members of such group worse off than they had been before the change) with respect to their opportunity to exercise the electoral franchise effectively. See Beer v. United States, 425 U.S. 130, 140-42 (1976)." See Objection letter, 1. Beer

---

[20]    Some of the memoranda summarizing telephone calls between USDOJ and unidentified individuals in Mobile County include speculation about whether those individuals thought Juan Chastang could have been elected to the position he now holds. The identities of the individuals called are unknown to the State; that information has been blacked out of the records we received to protect their privacy. Likewise unknown is the identity, if any, of Mr. Chastang's fictional opponent. In our experience, the results in elections frequently turn on the identity of the candidates.

Request for Reconsideration
January 30, 2007
Page 32

was reapportionment case, and thus the issue concerned a redrawing of district lines that would impact whether members of a minority group would have an improved, unchanged, or worse chance to elect the candidates of their choice at each and every election that followed until the lines were redrawn.

To conclude from <u>Beer</u> that USDOJ should interpose an objection to the use of an appointment to fill a vacancy, where appointment is the only method authorized by State law, and where appointment is the long-standing general law of the State, because an unauthorized special election was once held, and because the State is unable to affirmatively prove who would win a special election were it to be held, is remarkable indeed. Such an application of <u>Beer</u> does not appear to me to be what the United States Supreme Court had in mind. Nor does it respect the difficult position in which the State is placed.

## CONCLUSION

For all of these reasons, I request reconsideration of the decision to interpose an objection to State's enforcement of the Alabama Supreme Court's decisions in <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u>. I further request that, as the reconsideration proceeds, if USDOJ needs information, it inform the State of what information it needs to assure itself that the Section 5 does not require an objection to the enforcement of these decisions.

The plaintiffs in the federal litigation are pushing for immediate and invasive relief. Therefore, I also request that the reconsideration proceed as quickly as it responsibly can. Of course, I understand that pursuant to 28 C.F.R. § 51.48 a new 60-day period commences upon your receipt of this request for reconsideration. I also understand that clock could restart in the event that USDOJ does not now have all of the information that it needs to complete its analysis.

Upon further analysis, I urge USDOJ to withdraw this objection. The decision to interpose an objection to the enforcement of <u>Stokes v. Noonan</u> and <u>Riley v. Kennedy</u> in the first place has put the State in a very difficult position. The issue is important enough that, if the objection is not withdrawn, the State could be forced to pursue judicial preclearance. Such a course of action is time-consuming and generally undesirable. I hope it can be avoided, and I look forward to hearing from you.

Sincerely,

Troy King
Attorney General