

**U.S. Department of Justice**

Civil Rights Division

*Office of the Assistant Attorney General*

*Washington, D.C. 20530*

MAR 12 2007

Mr. Troy King
Attorney General
Mr. John J. Park, Jr.
Assistant Attorney General
State of Alabama
Alabama State House
11 South Union Street
Montgomery, Alabama 36130

Dear Messrs. King and Park:

This letter refers to your January 30, 2007 request that, under 28 C.F.R. § 51.45, the Attorney General reconsider his objection to the change in method of selection for filling vacancies occurring on the Mobile County Commission from special election to gubernatorial appointment in Mobile County, Alabama, pursuant to decisions of the Alabama Supreme Court in *Stokes v. Noonan*, 534 So. 2d 237 (Ala. 1988), and *Riley v. Kennedy*, 928 So. 2d 1013 (Ala. 2005), submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, as amended. We received your request on January 30, 2007.

We have carefully considered all of the information contained in your reconsideration request. Under Section 5, whether considering an initial submission or a request for reconsideration, the Attorney General must determine whether the submitting authority has met its burden of showing that the proposed change "neither has the purpose nor will have the effect" of denying or abridging the right to vote on account of race. *Georgia v. United States*, 411 U.S. 526 (1973). See also *Procedures for the Administration of Section 5 of the Voting Rights Act*, 28 C.F.R. § 51.52. "A change affecting voting is considered to have a discriminatory effect under Section 5 if it will lead to a retrogression in the position of members of a racial or language minority group (*i.e.*, will make members of such a group worse off than they had been before the change) with respect to their opportunity to exercise the electoral franchise effectively." 28 C.F.R. § 51.54(a), *citing Beer v. United States*, 425 U.S. 130, 140-42 (1976).

As an initial matter, we note that the State's reconsideration request contains no new factual information that impacts the retrogression inquiry. Pursuant to Act No. 85-237, a vacancy on the Mobile County Commission is to be filled through popular election by the voters within the relevant single-member district. Pursuant to decisions of the Alabama Supreme Court in *Stokes v. Noonan* and *Riley v. Kennedy*, that method of filling vacancies was changed from election by the voters of the district to appointment by the Governor of Alabama. The Attorney General interposed his objection because the change in method of filling vacancies from election to appointment, as applied here, has the effect of denying the minority voters of majority-black Mobile County Commission District 1 the ability to elect a candidate of choice when a vacancy occurs.

In your request for reconsideration, you raise six primary arguments to support your contention that the objection was inappropriate: that the use of Act No. 85-237 as a benchmark is incorrect on the grounds that Act No. 85-237 was never "in force or effect"; that the objection is an unjustified intrusion into state sovereignty; that the objection evinces a general disapproval of changes from election to appointment; that *Stokes v. Noonan* and *Riley v. Kennedy* are based on generally applicable, race-neutral principles; that the individual selected by the Governor of Alabama is African-American; that it is impossible to prove that that individual would not have been the candidate of choice of District 1 voters; and that Alabama is now left without a mechanism for filling vacancies on the Mobile County Commission, because Act No. 2006-342 is not immediately enforceable. Each of these arguments has already been dealt with by the three-judge panel of the United States District Court for the Middle District of Alabama that decided *Kennedy v. Riley*, 445 F. Supp. 2d 1333 (M.D. Ala. 2006), by the Attorney General in the January 8, 2007, objection letter, or by both. Nevertheless, for the sake of clarity, we shall address each of your arguments seriatim.

Regarding the use of Act No. 85-237 as the benchmark against which we measure retrogression, the use of a procedure as a benchmark does not depend on the legality of that procedure under state law. The Supreme Court specifically has clarified that a pre-existing procedure that violates state law must still be used as a benchmark. In *Perkins v. Matthews*, 400 U.S. 379 (1971), Canton, Mississippi, was required by a 1962 (pre-Voting Rights Act) state law to change to at-large elections for its city council. Canton illegally continued to use a district system in its (post-Act) 1965 elections. Even though the district system violated state law, the Court held that the district system served as the benchmark because "the procedure in fact 'in force or effect' in Canton on November 1, 1964, was to elect aldermen by wards." *Id.* at 395. Similarly, in *City of Lockhart v. United States*, 460 U.S. 125 (1983), the Supreme Court held that "[t]he proper comparison is between the new system actually in effect on [Section 5 the coverage date] regardless of what state law may have required." *Id.* at 132 (citing *Perkins*).

Following the Supreme Court's guidance, the District Court held that "[c]hanges are measured by comparing the new challenged practice with the baseline practice, that is, the most recent practice that is both precleared and in force or effect." *Kennedy v. Riley*, 445 F. Supp. 2d

at 1336 (citing *Abrams v. Johnson*, 521 U.S. 74, 96-97 (1997); *Gresham v. Harris*, 695 F. Supp. 1179, 1183 (N.D. Ga. 1988) (three-judge court), *aff'd sub nom. Poole v. Gresham*, 495 U.S. 954 (1990)). It is not contested that Act No. 85-237 was precleared by the Attorney General; what is at issue is whether it was "in force or effect." As the case law indicates, the Act remains in full force and effect because it was implemented in an election cycle. The three-judge panel duly found this fact dispositive, stating that "Act No. 85-237 was . . . put into force and effect with the election of [Samuel] Jones in 1987[.]" *Kennedy v. Riley*, 445 F. Supp. 2d at 1336. Indeed, no other steps could have been taken than were in fact taken to put the election method into force or effect. Accordingly, we see no basis on which we could depart from the determination of the three-judge panel, and of this Department, that Act No. 85-237 was in fact put into force and effect with the election of Mr. Samuel Jones in 1987. Act No. 85-237, therefore, is the proper benchmark for measuring potential retrogression.

We are aware of no court decision, and your letter cites none, in which a court has held that a practice was not "in force or effect" where an election was held under that practice. Your reliance on *Young v. Fordice*, 520 U.S. 273 (1997), is misplaced. *Young* involved a provisional voter registration plan that had not been enacted by a state legislature, that was only in use for forty-one days, and that was only utilized by a third of the state's registrars. Moreover, and critically, no election was conducted or imminent under that voter registration plan. *Young*, 520 U.S. at 282-83. Under those circumstances, the Court held that the plan remained a work in progress and was not in force or effect. *Id.* at 283. In contrast, here, as in both *Perkins* and *Lockhart*, elections had been held under the questioned practices.

Your letter also relies on your assertion that appointment is the longstanding norm in Alabama. This assertion is at odds with many recorded instances in Alabama in which vacancies have been filled by election rather than appointment. In any event, your letter cites no legal authority establishing why such a practice or tradition is important to the legal analysis required in the Voting Rights Act. Indeed, the longstanding and persistent nature of some discriminatory practices was a reason for the enactment of Section 5. The law is clear: under Section 5, once a gain in voting rights is established as a benchmark, retrogression from that benchmark is prohibited. *Beer v. United States*, 425 U.S. 130, 141 (1976).

Your letter also urges that this objection unjustifiably intrudes into Alabama's sovereignty and the role of the Alabama courts, and contends that a "state statute within the scope of Section 5 must be both valid as a matter of state law and precleared if it is to be enforceable." Recons. Req., at 16. You provide no support for this argument other than your trial brief in *Kennedy v. Riley*, which was unanimously rejected by a federal three-judge panel. It is uncontroverted that a Section 5 change may be brought about by seeking to implement state court decisions. *Branch v. Smith*, 538 U.S. 254, 262 (2003). The Supreme Court has ruled on numerous occasions that the authority, pursuant to Section 5, to bar the implementation of a change under state law is an "appropriate means for carrying out Congress' constitutional responsibilities and . . . [is] consonant with all other provisions of the Constitution."

*South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966). "Principles of federalism that might otherwise be an obstacle to congressional authority are necessarily overridden by the power to enforce the Civil War Amendments 'by appropriate legislation.' Those Amendments were specifically designed as an expansion of federal power and an intrusion on state sovereignty." *City of Rome v. United States*, 446 U.S. 156, 179 (1980). *See also Katzenbach*, 383 U.S. at 334-35.

As such, the fact that the proposed change would be generally applicable is not legally dispositive. All changes are analyzed under the same fact-intensive, context-specific framework to determine whether they comply with the Section 5 retrogression standard. The Attorney General's objection is based on the State's failure to establish the absence of such an effect.

Your letter also urges that the fact that the individual appointed to the Mobile County Commission District 1 seat is African-American demonstrates a lack of discrimination in the selection. The Voting Rights Act, however, looks to the opportunity of the voters to choose a candidate of their choice, and not to the race of the person chosen. It does not set aside certain positions based on race. "[A] minority preferred candidate may be a non-minority. Conversely, a candidate is not minority-preferred simply because the candidate is a member of the minority." *Ruiz v. City of Santa Maria*, 160 F.3d 543, 551 (9th Cir. 1998) (internal citations omitted).

Our conclusion that the individual appointed by the Governor would not have been the candidate of choice of District 1 voters is supported by interviews with experts on Mobile politics, including officials of both parties, and neutral political scientists whom we have independently contacted. Further, as we explained in our objection letter, the evidence establishes that electoral choices of the voters of Mobile County Commission District 1 regularly differ from the choices of voters in the State of Alabama as a whole, who elect the Governor of Alabama. Your letter presents no information – such as election returns, statements from experts or community leaders, details of the involvement of elected officials or advocates in the selection of an appointee for the position, instances in which a substantially similar constituency has elected this individual to office, or other information – to contradict the evidence adduced during our investigation. Hence, the uncontroverted evidence before us makes clear that the effect of the implementation of *Stokes v. Noonan* and *Riley v. Kennedy* is to lead to a retrogression in the position of the African-American citizens of Mobile County Commission District 1 with respect to their opportunity to elect the candidate of their choice.

In the absence of facts supporting your claim that the instant change would not be retrogressive, your letter states that our objection evinces a policy of blanket disapproval of changes from election to appointment, and that we would never, for example, permit a change in the manner of selecting judges from election to appointment. That is simply incorrect. You will recall our June 29, 2006, letter preclearing Act No. 2006-355, which changed the method of

filling a new judgeship from the longstanding practice of election to appointment by the Governor. Indeed, in 1999, we precleared precisely the type of change suggested in your reconsideration request, a Florida statute permitting jurisdictions to adopt a "Missouri Plan" system of judicial selection that involved initial appointment and retention elections. We have precleared many changes from election to appointment for judges and other positions. We look at the reality of each change as it affects the opportunity of minority citizens to participate effectively in the political process. "[A]ny assessment of the retrogression of a minority group's effective exercise of the electoral franchise depends on an examination of all the relevant circumstances, such as the ability of minority voters to elect their candidate of choice, the extent of the minority group's opportunity to participate in the political process, and the feasibility of creating a nonretrogressive plan." *Georgia v. Ashcroft*, 539 U.S. 461, 479 (2003). That assessment remains unchanged in this instance.

Under these circumstances, I must, on behalf of the Attorney General, decline to withdraw the January 8, 2007 objection to the change in method of selection for filling vacancies occurring on the Mobile County Commission from special election to gubernatorial appointment in Mobile County, Alabama, pursuant to the *Stokes v. Noonan* and *Riley v. Kennedy* decisions.

As we previously advised, you may seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed change has neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. We remind you that unless such a judgment is rendered by that court, the objection by the Attorney General remains in effect and the proposed change continues to be legally unenforceable. See *Clark v. Roemer*, 500 U.S. 646 (1991); 28 C.F.R. § 51.10.

Finally, we note that you have contended that if the decisions in *Stokes v. Noonan* and *Riley v. Kennedy* are not precleared, you will be left without a mechanism for filling vacancies on the Mobile County Commission that is both precleared and valid as a matter of state law. Both Act No. 85-237 and Act No. 2006-342 provide this authority – Act No. 85-237 because it remains in force in the absence of authority to implement the decisions in *Stokes v. Noonan* and *Riley v. Kennedy* because they have not been precleared, and Act No. 2006-342 inasmuch as it simply reaffirms that special elections are to take place when vacancies occur. Only changes in "voting qualification[s] or prerequisite[s] to voting, or standard[s], practice[s], or procedure[s] with respect to voting" fall within the purview of Section 5. 42 U.S.C. § 1973c(a). Thus, if an enactment has not brought about a change, it need not be submitted for Section 5 review. If Act No. 2006-342 only reaffirms the most recent practice that is both precleared and in force or effect, *i.e.*, Act No. 85-237, it need not be submitted for review under Section 5. If Act No. 2006-342 effects changes, we will be happy to review them under Section 5 on an expedited basis. Meanwhile, the special election provisions of Act No. 85-237 must be used for Commission vacancies.

If you have any questions, you should call Mr. Robert Lowell (202-514-3539) of our staff. Please refer to File No. 2006-6792 in any response to this letter so that your correspondence will be channeled properly.

Sincerely,

Wan J. Kim
Assistant Attorney General