IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| **YVONNE KENNEDY, JAMES BUSKEY & WILLIAM CLARK,** | * | |
| | * | |
| Plaintiffs, | * | |
| vs. | * | CIVIL ACTION |
| | * | |
| **HONORABLE BOB RILEY**, as Governor of the State of Alabama. | * | NO.  2:05 CV 1100-T |
| | * | |
| Defendant. | * | |
| | * | |

## PLAINTIFFS' RESPONSE TO EMERGENCY MOTION TO STAY

Plaintiffs respond as follows to the Motion for Stay, filed by Governor Riley. Governor Riley seeks a stay of this Court's order declaring the seat in question on the Mobile County Commission to be vacant. For the reasons stated herein, the Court should deny the Motion to Stay.

1.  The Motion to Stay seems to seek two things in the alternative. First, the Governor seeks a stay, for the entire length of time it would take for the State to (a) appeal this Court's decision to the U.S. Supreme Court, and to litigate that appeal to final conclusion; and also, (b) seek judicial approval of the non-precleared voting practice(s) in question, in the U.S. District Court for the District of Columbia. Second, in the alternative, the Governor seeks a stay allowing his unlawful appointee Mr. Chastang to remain on the Commission until there has been a special election for the seat in question. (Motion to Stay, ¶ 6, 7).

2. Let us take the latter request first. The main and fatal problem with it is this: that the

Governor has not even committed that there will be a special election. He is, apparently intentionally, coy about that in his motion. So, there is absolutely no basis upon which this Court could or should grant the request for a stay pending the results of a special election, where there is no commitment even to have such a special election. <u>If</u> the Governor commits to have such an election, and <u>if</u> proceedings get underway for such an election, <u>then</u> this Court could determine whether it would be appropriate to allow the unlawfully-appointed Mr. Chastang to remain in office until the election. We submit that there would be no reason to grant such relief; offices remain vacant quite often, in Alabama and in jurisdictions throughout the country, pending special elections. That is exactly what should have happened as to this post, and it should have happened years ago; there is no reason why the law should frown upon the same thing happening now. But this is a question that the Court does not even need to decide, at this point – because at this point the Governor is simply trying to obtain an open-ended stay since there is as yet no commitment even to hold a special election.

   3. Next, we turn to the request that this Court allow the unlawfully-appointed Mr. Chastang to remain in office until the end of *both* not-yet-commenced U.S. Supreme Court litigation *and* not-yet-commenced litigation in the U.S. District Court for the District of Columbia. What the request means, really, is that the Governor wants this Court to declare that there will never be a special election, and that his unlawfully-inserted appointee will serve out the full term for which he was unlawfully appointed. Here is the reason why this is what the Governor's request means. To our understanding, the term in question will end in 2008, and there will be a regular election for the office during the 2008 election cycle. This would include primary elections, perhaps as early as February under recent legislation. So, a realistic view is

2

that if the Court granted the Governor's request for a stay, then even if the litigation that the Governor contemplates were finished by the end of 2007, it is unlikely that the Court would at that point order a special election. The Court, in all likelihood, would note that a regular election would soon be underway, and that a special election was therefore not needed.

    4. Thus all the Governor would have to do, if this Court entered the requested stay, is to ensure that his contemplated litigation rambles on until the end of the year, or close to it – and then he would have completely avoided a special election to replace his unlawfully-inserted Commissioner. And of course it takes no expert on Voting Rights litigation to understand that the State could easily spend a year litigating in the District of Columbia District Court. (There is, by the way, no reason why the State could not have already instituted such a suit long ago, upon receiving the Justice Department's refusal to "preclear" – no reason, that is, except for delay.) This suit itself, which is relatively much more simple than an intensely fact-based D.C. District Court voting rights suit, has taken well over a year already.

    5. So, let us call the Governor's "Motion to Stay" what it is: a motion to never have a special election despite this Court's finding of a violation of the Voting Rights Act, and despite the fact that such a special election is the obvious proper consequence of this Court's decision. (In fact, the Governor's requested relief would go beyond a mere decision by this Court not to affirmatively *order* a special election; it would quite possibly, beyond that, amount to a decision by this Court not even to allow a *state court* or *state or local officials* to decide that a special election was appropriate in light of the vacancy that this Court has found to exist; by granting the

3

stay and thereby eliminating the vacancy, this Court would likely be held to be barring the possibility of a special election.)[1]

6. So, having recognized what the "Motion to Stay" is actually requesting, the question becomes whether it would be legally appropriate to grant such request. It would not.

7. Other than saying that this Court's decision on the merits is wrong and that he thinks he might prevail in either the Supreme Court or the D.C. District Court, the only thing offered by the Governor as weighing in favor of this requested stay is that a special election would cost money. (Motion to Stay, ¶ 2). Notably, however, the Governor has not even presented this Court with any evidence as to what the cost would be; he alleges only that he offered a certain estimate of that cost, in related Alabama Supreme Court litigation. Even if the cost of a special election was enough to justify the requested stay, still the request in this instance would be inappropriate because it is not supported by any actual evidence.

8. But even if the Governor's allegation about the relatively modest cost of a special election were correct, that is no reason for this Court to stay its order declaring the seat vacant. The Governor's motion fails the relevant test, under Fed. R. Civ. P. 62 (which is the only source of "stay" authority that the Governor invokes).

9. Presumably the Governor wants this Court to treat its order vacating Mr. Chastang's appointment as an order granting an injunction, for purposes of Rule 62. If that is not how this Court sees its order, then Rule 62 makes no provision for staying the order at all.

---

[1] The Alabama Legislature in 2006 adopted Act No. 2006-342 (Exhibit A) to address the "retroactivity" issue relied on by the Alabama Supreme Court in Kennedy v. Riley, 928 So.2d 1013 (Ala 2005). The vacancy created by this Court's May 1, 2007 ruling would be filled under this statute, not by the procedure In Act No. 85-237.

10. Assuming, then, that the Court's order was an injunction, we should note that Rule 62(c) declares that no stay can be entered here unless it is done either in open court, or "by the assent of all the judges of such court evidenced by their signatures to the order." [2]

11. This Court's decision on whether to stay an injunction pending appeal, under Rule 62(c), is to be guided by familiar factors.

> Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed. Rule Civ. Proc. 62(c); Fed. Rule App. Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119 (1987). In this case, these factors weigh enormously against a stay.

12. First, the Governor has certainly not made a "strong showing that he is likely to succeed on the merits." He has made no showing whatsoever, and certainly not a strong showing, that he would be likely to prevail in the U.S. Supreme Court, on an appeal from this Court's decision. Nor has he made any showing whatsoever – certainly not a strong one – that the D.C. District Court would be likely to disagree with the Justice Department and "clear" the voting practice(s) in question. On this latter point, the

---

[2] Furthermore, it appears that under Rule 62(c), there cannot be a stay pending appeal until there is first, actually, an appeal. "When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party." There has been no appeal yet.

Governor has literally offered nothing – no evidence or legal argument – but his own assertion that he thinks he'll win. That, obviously, is not enough to carry the burden on this first factor.

13. On the second factor, i.e. whether the Governor will be irreparably harmed absent a stay, there is perhaps only the relatively small and manageable cost of a special election – which counts as a cognizable "harm" only if one assumes that the Governor is right and that this Court was wrong on the merits.

14. Remarkably, the Governor completely ignores the third and fourth factors, which weigh dispositively against a stay. To stay the Court's order and allow the unlawfully-appointed Mr. Chastang to serve out his term would irreparably harm the plaintiffs and every other affected voter. They would have forever lost what the Voting Rights Act protects: <u>the right to vote</u>, as to whether Mr. Chastang or someone else should represent them during the remainder of this term. The interest of the plaintiffs and other voters, and of the public at large, are vitally affected here. They cannot be ignored, as the Governor seeks to ignore them. This Court has already declared that the rights of plaintiffs (and thus other voters as well) were violated as a matter of law, and that Mr. Chastang's appointment must be vacated. To stay that order would mean that – despite the Court's conclusion about the merits of the case – the Court was deciding that the rights of the voters should *continue* to be violated, for the <u>year and a half</u> remaining in the term in question. This Court, having decided that plaintiffs were correct on the law,

should not subject them and their fellow voters to another year and a half of violation of their rights.

The motion to stay should be denied.

Respectfully submitted,

| s/ J. CECIL GARDNER | s/ EDWARD STILL |
|---|---|
| J. Cecil Gardner | Edward Still |
| M. Vance McCrary | Suite 201 |
| GARDNER, MIDDLEBROOKS, | 2112 11th Avenue South |
| GIBBONS, KITTRELL, OLSEN, | Birmingham, AL 35205 |
| WALKER & HILL, P. C. | Phone: 205-320-2882 |
| P. O. Box 3103 | Fax: 877-264-5513 |
| Mobile, Alabama 36652 | E-mail: Still@votelaw.com |
| Phone: 251-433-8100 | |
| Fax: 251-433-8181 | |
| E-mail: cgardner@gmlegal.com | |
| vmccrary@gmlegal.com | |

## CERTIFICATE OF SERVICE

I hereby certify that on May 5, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Hon. Bob Riley | John S. Parks, Esq. |
| Governor, State of Alabama | Charles Campbell, Esq. |
| State Capitol | Assistant Attorney General |
| 600 Dexter Avenue | 11 South Union Street |
| Montgomery, AL 36130 | Montgomery, AL 36130 |

Hon. Bob Riley
Governor, State of Alabama
c/o Hon. Troy King
Office of the Attorney General
Alabama State House
11 South Union Street, Third Floor
Montgomery, AL 36130

s/J. Cecil Gardner