IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YVONNE KENNEDY, JAMES ) <br> BUSKEY & WILLIAM CLARK, ) <br>  ) <br> **Plaintiffs,** ) <br>  ) <br> vs. ) <br>  ) <br> HONORABLE BOB RILEY, ) <br> as Governor of the State of Alabama ) <br>  ) <br> **Defendant.** ) | CIVIL ACTION <br> NO. 2:05 CV 1100-T |

### RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION
### FOR AWARD OF ATTORNEYS' FEES

Pursuant to this Court's Order of May 23, 2007 (No. 60), Governor Riley submits this Response in opposition to Plaintiffs' Amended Motion for Award of Attorneys' Fees (No. 62). For the reasons stated below, the amount requested is unreasonable and excessive. Instead of the amount requested, this Court should award substantially less:

1. At the outset, Governor Riley notes that it is premature to consider awarding attorney fees. Governor Riley has filed notice of appeal, the proceedings in this Court cannot be said to be concluded, and Governor Riley's counsel has been working on a complaint that would seek, among other things, judicial preclearance of the decisions in question. If Governor Riley prevails on appeal, the decisions of the Supreme Court of Alabama are judicially precleared, or both, the Kennedy Plaintiffs will not have prevailed, in whole or in part. They will not be entitled to the fees claimed, and, if any payments are made, Governor Riley will seek recovery of them.

2. In their original Motion (No. 24), filed on September 1, 2006, Plaintiffs asked for an award of $58,555.59 in attorneys' fees and costs, an amount that consists of a

request for $57,110.00 in attorneys' fees and $1441.59 in costs. In his Response (No 29), Governor Riley suggested that both components of that request should be reduced, noting that the request amounted to more than $2,000 per docket entry, without regard to whether Plaintiffs' counsel had a hand in generating it, and more than $2,000 for each page of text Plaintiffs' counsel had generated. Governor Riley suggested that an award of no more than $30,000 was justified.

3. In their Amended Motion, the Kennedy Plaintiffs' attorneys have updated their time and expenses, but rely on the Affidavits submitted with their original Motion to support their hourly rates. Governor Riley reiterates and updates his response to those hourly rates.

4. With respect to the hourly rate claimed by Edward Still, Governor Riley notes that, in the State court case of *Gooden v. Worley*, to which he referred, Still submitted a very similar affidavit. In that State-court affidavit, he requested an hourly rate of $250.00 per hour, *see* No. 29 at Exhibit 1, but he now asks for $300.00. That inconsistency aside, he also pointed to the State court ruling giving him $350.00 per hour. The State court's award has no relevance because the underlying judgment was held void on appeal and the award of fees was reversed. *See Chapman v. Gooden*, __So. 2d __, 2007 WL 1576103 (Ala. June 1, 2007). Even if the award had stood, however, the relevant indicator is the market rate at which an attorney bills, not the rate used by a court in making an award. *See Dillard v. Town of Greensboro*, 213 F. 3d 1347 (11th Cir. 2000). As the court explained, "Prior awards are not direct evidence of market behavior; the court is not a legal souk." *Id*. at 1355. Accordingly, Still, who states that his hourly billing rate for

non-contingent cases ranges between $200 and $250, should not receive more than $250 an hour for his time.

     5. As for Gardner and McCrary, Governor Riley notes that their experience is in the areas of labor and employment law, class actions, and toxic torts. *See* No. 24 at Ex. 3. Neither of them states that he has any experience in voting rights matters. If they want to be paid at the rates they request, they should work in those areas in which they claim expertise. In this case, where they make no assertion of expertise, their hourly rates should reflect that. Otherwise, they will have been paid to learn a new area of law at the State's expense. In Governor Riley's view, Gardner, who states that his non-contingent billing rate ranges between $175 and $300, No. 24, Ex. 3 at 7-8, should not receive more than $200 per hour and McCrary, whose regular billing rate is not identified, should receive no more than $125.

     6. As for Heldman and Ball, neither has submitted an Affidavit attesting to their hourly billing rates, but Gardner states that it is "[his] understanding, from conversations with other lawyers", that they would bill for $300 per hour. *See* No. 24, Ex. 3 at 6-7. Gardner's understanding, with respect, should not justify those rates. Rather, those lawyers, who are each junior to Still and Gardner, should receive no more than Gardner's $200 per hour.

     7. Making these changes to the hourly billing rates, without altering the hours, reduces the total fees to some $77,675.00. In Governor Riley's view, another 25% of that amount should be deducted to remove the effects of overlawyering.

     8. That overlawyering can be measured in several ways. First, there are only 64 docket entries in the case file. If the fee request is sustained in full, the Plaintiffs will

3

recover more than $1,700 per docket entry, whether their attorneys had a hand in generating it or not.

9. As it was, the written work product of the Plaintiffs was limited and does not support the amount requested. In this case, the Plaintiffs produced a 3 page Complaint (No.1), a 9 page Initial Brief (No. 15), a Reply Brief of 6 pages (No. 17), a Supplemental Brief of 3 pages (No. 20), a fee request that includes 4 pages of briefing (No. 24), a Motion for Further Relief of 2 pages (No. 35), a Motion for Reconsideration of 6 pages that was denied without prejudice (Nos. 38 and 41), a Renewed Motion for Further Relief of 3 pages (No. 47), a Response to Emergency Motion to Stay of 7 pages (No. 50), an unopposed motion for additional time of 2 pages (No. 51), and the amended fee petition.[1] They also participated in the drafting of 28 factual stipulations (No. 14) and 8 supplemental factual stipulations. (No.19). To the extent that the Plaintiffs have sought a special election, they have not prevailed and should not be compensated for those efforts. Leaving the stipulations aside and taking success into account, if the fee request is sustained in full, Plaintiffs will be paid more than $2,000.00 for each page of substantive product.

10. The same degree of overlawyering is present at the micro level. With respect to the Complaint, it appears that Still claims some 6.5 hours, while Gardner and McCrary claim some 35.8 hours; the total of more than 42 hours amounts to more than 14 hours per page. For the Brief, Plaintiffs appear to claim some 13 hours from Still and 8 from

---

[1] With respect to the proposed intervention of Probate Judge Davis and the Plaintiffs' State court lawsuit, nothing has happened to date except churning. The proposed intervention was withdrawn and the State court action dismissed. In Governor Riley's view, a special election can be ordered only by a State court, if it can be ordered at all. The Kennedy plaintiffs are not entitled to compensation for work done in State court. Moreover, it is too early to consider compensating the Plaintiffs for actions that are pending and as to which, they have not prevailed. Governor Riley estimates that Plaintiffs' counsel have included some $6,000 related to the proposed intervention and the State court lawsuit.

the other lawyers, more than 2 hours per page. On the Reply Brief, the Plaintiffs appear to claim some 10.5 hours for Still and 11 hours from the other lawyers, more than 3 hours per page. Finally, the entries for Gardner and McCrary show that, on November 11, 2005, McCrary spent 8 hours on the road from Mobile to Birmingham and back for a 1 hour meeting with Still.

11. Governor Riley notes further that, in the Gardner firm's time records, on pages 6-8, certain time entries for JCG include the notation "(ES)", and the time records for Still include identical or nearly identical amounts of time for the same activity. Governor Riley questions whether the some 25 hours of time billed at $300 per hour is the time of Gardner or Still, but the entries could be seen as duplicative.

12. As for the Fee Petition, Governor Riley notes that it bears a substantial resemblance to the brief filed in state court in *Gooden v Worley*. *See* No. 29 at Exhibit 2. As noted above, Still's Affidavit in this case is very similar to the Affidavit he submitted there. The same holds true for the Affidavit of Jim Blacksher. *See* No. 29 at Exhibit 3. In short, the Fee Petition is simply boilerplate, and the State should not have to pay for reinventing it.

13. With respect to the expenses, Gardner and McCrary each include a claim for lodging and meals on September 29, 2005, and Gardner includes the expense of a rental car on November 6 and 7, 2005. No. 24, Ex. 3-A, at 5-6. With respect, Governor Riley believes that these entries have been included by mistake. The dates for those entries precede the beginning of time entries for this case. Moreover, *Riley v Kennedy* was argued in the Alabama Supreme Court on November 7, and the decision was issued on November 9, 2005. *See Riley v. Kennedy*, 928 So. 2d 1013 (Ala. 2005).

14. For those reasons, Governor Riley believes that an award of no more than $60,000.00 is justified. An award of that magnitude would reasonably compensate the Plaintiffs' attorneys for their work, including their written product, the stipulations, a 7 minute conference call with the court, preparation for and participation in oral argument of 1 hour, coordination, strategizing, and the remaining claimed expenses, without rewarding them for overlawyering or lack of success.

15. In conclusion, Governor Riley believes that this Court should award substantially less then the amount requested. The case file does not support an award of some $110,000.00, but, in Governor Riley's view, supports an award of no more than $60,000.00.

Respectfully submitted,

**TROY KING (KIN047)**
**ATTORNEY GENERAL**
**BY:**


**s/ John J. Park, Jr.**
John J. Park, Jr. Bar Number: (PAR041)
Special Deputy Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us

7

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 8th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following (or by U.S. Mail to the non CM/ECF participants):

J. Cecil Gardner, Esq.
M. Vance McCrary, Esq.
The Gardner Firm PC
Post Office Box 3103
Mobile, AL 36602

Edward Still
Edward Still Law Firm LLC
2112 11th Avenue South, Suite 201
Birmingham, AL 35205-2844

s/ John J. Park, Jr.
John J. Park, Jr. Bar Number: (PAR041)
Special Deputy Attorney General
Office of the Attorney General
11 S. Union Street
Montgomery, AL  36130-0152
Telephone:  (334) 242-7300
Fax:  (334) 353-8440
E-mail:  jpark@ago.state.al.us